UNITED STATES, Appellee

v.

JAMES H. SMITH, Corporal, U. S. Army, Appellant

2 USCMA 197, 7 CMR 73

No. 887

Decided February 13 1953

Lt. Col. George E. Mickel, U. S. Army, 1st. Lt. William S. Maxwell, U. S. Army, and 1st. Lt. Justin L. Vigdor, U. S. Army, for Appellant.

Lt. Col. Thayer Chapman, U. S. Army, and Capt. Irvin M. Kent, U. S. Army, for Appellee.

## Opinion of the Court

Robert E. Quinn, Chief Judge.

The accused was convicted by general court-martial in Korea of misbehavior before the enemy and assault with a rifle. He was sentenced to dishonorable discharge, total forfeiture of pay, and confinement for seven years. Army reviewing authorities have upheld the findings and sentence. We granted the accused's petition for review.

The only controversy in this case involves the misbehavior conviction. The accused was found guilty under a specification, laid under Article 99 of the Uniform Code of Military Justice, 50 USC § 693, which read as follows:

"Specification: In that Corporal James H. Smith, United States Army, Company I, 7th Infantry Regiment, at APO 468, on or about 27 November 1951, was guilty of cowardly conduct, in that he, while being transported from the rear area to the front lines, told the driver of the vehicle, 'to stop' and then jumped from said vehicle and said 'I'll kill the first man that tries to take me up there', or words to that effect."

On November 26, 1951, the accused, who had just been released from the hospital, reached the rear echelon command post of his unit. He spent the night there and was informed the following morning that he would take the first available transportation back to his company, which was on the line about five or six miles away. Later in the day, the accused caught a ride in a jeep which was going up to the front. Besides the accused, those in the jeep were the driver, a Sergeant Meyers, and one other soldier. After they had driven some distance, the jeep passed a friendly artillery unit, which was firing from positions alongside the road. The accused ordered the driver to stop the jeep and, when the driver complied, got out, pointed his rifle at the passengers and said that he would shoot or kill any man that tried to take him up to the company. Sergeant Meyers got out of

the jeep and attempted to reassure the accused, telling him that the artillery was friendly and that there was nothing to fear. The accused repeated his threat. He appeared to be "rather nervous" and his hands were trembling.

Sergeant Meyers got back into the jeep, informing the accused that nobody was going to take him up to the company. The accused started walking back toward the kitchen trains and was picked up by the jeep driver on the latter's return trip to the rear area. Later in the same day, the accused was found in the tent where he had spent the previous night. A Master Sergeant Barnett, believing him to be suffering from combat fatigue, picked up the accused and took him to the collecting station.

It is first alleged that the specification does not, as a matter of law, state an offense since it omits the ▮ allegation that the act of cowardice occurred before or in the presence of the enemy. We may concede that this is a necessary element of the offense charged. Manual for Courts-Martial, United States, 1951, paragraph 178e, page 333. However, as will be spelled out in more detail later, it is our opinion that the evidence adequately established this element of the offense. Further, the element was expressly submitted by the law officer to the court in his pre-finding instructions and is thus necessarily embodied in the court's findings. See United States v. Hunter (No. 359), 6 CMR 37, decided October 17, 1952; United States v. Kubel (No. 229), 5 CMR 73, decided August 29, 1952.

The test which we have repeatedly enunciated as governing the sufficiency of specifications is that the accused must be adequately informed of the offense charged so that he may properly prepare his defense, and that the specification, together with the evidence, must protect the accused against a second trial for the same offense. United States v. Marker (No. 281), 3 CMR

127, decided May 19, 1952; United States v. Emerson (No. 77), 1 CMR 43, decided November 14, 1951. Both branches of the test are met here. The charge and specification, by alleging the act, the cowardice, and the article charged, informed the accused of the precise offense involved. The use of the words "to the front lines" in the specification certainly carry some connotation of the presence of enemy units. As already noted, the necessary element is adequately established by the evidence of the record. While not condoning the carelessness with which this specification was drafted, we hold it to be sufficient as a matter of law. See Collins v. McDonald, 258 US 416, 66 L ed 692, 42 S Ct 326.

We turn next to the sufficiency of the evidence to support the findings and ▆▆▆ ▆ note at the outset that there can be no question of the adequacy of the evidence supporting the assault charge. As to the misbehavior charge, appellate defense counsel urges that there is insufficient proof to establish that the act alleged occurred in the presence of the enemy or that the accused was motivated by cowardice.

The evidence in the record relating to the proximity of enemy forces consists of the proof that the accused's company was on the front line, some five to six miles from the rear command post where the accused reported in, that at the time of the incident the accused had ridden some distance along a road leading to the front lines, and that the alleged act of cowardice occurred adjacent to a friendly artillery unit which was then firing. We think this is ample evidence to establish that the incident occurred "before or in the presence of the enemy." That term is not confined to front-line combat action. According to Winthrop, it is not even necessary that the enemy should be in sight. "If he is confronting the army or in its neighborhood, though separated from it by a considerable distance, and the service upon which the party is engaged, or which he is especially ordered or properly required by his military obligation to perform, be one directed against the enemy, or resorted to in view of his movements, the misbehavior committed will be 'before the enemy' in the sense of the Article." Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 623. In the Manual for Courts-Martial, United States, 1951, paragraph 178, it is stated that "whether a person is 'before the enemy' is not a question of definite distance, but is one of tactical relation. For example, a member of an antiaircraft gun crew charged with opposing anticipated attack from the air, or a member of a unit about to move into combat may be before the enemy although miles from the enemy lines." In United States v. Sperland (No. 366), 5 CMR 89, decided September 3, 1952, we held that a member of a mortar unit in direct support of front-line troops is "before the enemy."

Applying these tests to the facts of the instant case, we entertain no doubt that the accused was, in the terms of Article 99, supra, "before the enemy." He was en route to join his company, which was then in the front lines. At the time of the incident, he was something less than six miles from the front lines. The precipitating cause of his action was the firing of friendly artillery by a unit which the accused's jeep was passing. It may reasonably be said, therefore, that he was within range of possible enemy artillery fire. Considering this, together with his ultimate destination, the definitions quoted supra make it amply clear that the accused was "before or in the presence of the enemy."

In his argument concerning the insufficiency of the proof of cowardice, ▆▆▆ ▆ defense relies heavily on our decision in United States v. Yarborough and Marshall (No. 443), 5 CMR 106, decided September 12, 1952. We think that case is clearly distinguishable. There, the accused was convicted of misbehavior through cowardice based upon the act of self-injury. There was literally nothing in the record to show that the accused committed the act in question— conceding the presence of a desire to avoid further combat duty—because of fear. Here, we think the court could reasonably have found that the accused was motivated by fear. As already noted, his action in refusing to proceed further toward the front lines was pre-

cipitated by nearby artillery fire. He appeared to be nervous and his hands were trembling. Such actions are inconsistent with intent merely to obtain a respite from rigorous and tiring combat duty. This accused—unlike Yarborough and Marshall—had just returned from the rear area, and there is no evidence of prior long endurance of combat conditions. Indeed, it is difficult to rationalize accused's action on any basis other than fear. Whether this fear stemmed from a pusillanimous character—momentary or long-existing —or whether it resulted from a condition commonly referred to as combat fatigue—hinted at by one of the witnesses—is not material in connection with the sufficiency of the evidence to support the findings. Mental sickness not approaching the level of legal insanity will not relieve an accused from criminal responsibility for acts done in violation of the law. It is our conclusion that there is here substantial evidence to support the finding of the court-martial that the accused committed an act of misbehavior motivated by cowardice.

The final issue concerns the law officer's instructions on the elements of misbehavior. He informed the court that "The elements are: (a) That the accused committed an act of cowardice, as alleged; and (b) That this act occurred while the accused was before or in the presence of the enemy." We have previously condemned such instructions as prejudicially inadequate. United States v. Gilbertson (No. 318), 4 CMR 57, decided July 22, 1952; United States v. Soukup (No. 533), 7 CMR 17, decided January 23, 1953.

The decision of the board of review is reversed. The finding of guilty of assault is affirmed, and a rehearing is ordered as to the misbehavior charge. The case is remanded to The Judge Advocate General of the Army for further action not inconsistent with this opinion.

Judges LATIMER and BROSMAN concur.