UNITED STATES, Appellee

v.

WILLIAM A. EAGLESON, JR., Captain, U. S. Air Force, Appellant

3 USCMA 685, 14 CMR 103

686

No. 2353

Decided February 5, 1954

Col Kenneth B. Chase, USAF, and Maj Peter Portrum, USAF, for Appellant.

Lt Col Harold Anderson, USAF, and Capt Giles J. McCarthy, USAF, for Appellee.

### Opinion of the Court

Robert E. Quinn, Chief Judge:

The accused was convicted by general court-martial of reckless operation of a motor vehicle and leaving the scene of an accident, violations of Articles 111 and 134, respectively, of the Uniform Code of Military Justice.[1] He was sentenced to dismissal and a fine of $500.00. After approval by the convening authority, the board of review set aside the finding under the reckless operation charge, but affirmed the remainder of the findings, and the

---

[1] 50 USC §§ 705, 728.

**687**

sentence. The case is before this Court upon certificate of The Judge Advocate General of the Air Force, filed in accordance with Article 67(b)(2) of the Code,[2] supra, and upon the accused's petition for review.

The accused and a fellow officer, Captain Wytock, while stationed in England, visited North Wales for the weekend, travelling in the former's private automobile. On the night in question they stopped at a hotel, where they remained in the pub room for about an hour, consuming a few drinks and participating in the songs and dances of the establishment's patrons. Continuing on their way, they travelled over a three-lane, crowned, macadam highway thirty feet in width. The roadway was unlighted and slippery. Visibility was poor, for it had rained throughout the day and a light rain was then falling. Shortly after leaving the hotel, accused was observed travelling about 65 miles per hour. Two miles from this point he passed another automobile on the wrong side, and was observed by its operator to swerve suddenly in the highway and continue without stopping. When the operator of this car arrived at the place where the swerving occurred, he found Reverend Thomas Sawbridge lying in the roadway. The injured man had been cycling three and one-half feet from the edge of the road, on his proper side of the highway and with the required lights on his bicycle when struck by the accused's car. A passing motorist who had observed the accused earlier, coming upon the scene, was sent to the next village to summon aid. On the way he did not see the accused's vehicle.

Some time later, a police constable came upon the accused, parked at the side of the road, a considerable distance from the scene. Observing damage to the front of the car, consisting of a broken headlight, dented fender and smashed windshield, he inquired into its cause. The accused explained that while he was in the hotel, the car had been moved from its parking place and damaged. Since the broken windshield interfered with his vision, he added, he

was removing the glass. Unsatisfied with this response, the constable ordered him to return to the police station. There it was determined that no accident had been reported in that area and the accused was released. Upon releasing him, the constable again inquired into the cause of the damage and accused replied that it must have been caused by a rock thrown up by a passing truck.

Questioned two weeks later by local police, the accused stated that the windshield had been broken as he travelled along the highway, and after recovering from the shock of the occurrence, he stopped and walked back along the road. Finding nothing, he assumed the windshield had been broken by a rock and continued on his way.

Captain Wytock, who admitted he was drunk at the time, testified that as they travelled along, the windshield suddenly shattered and the accused exclaimed that they had hit something. They stopped and walked back about 35 yards and finding nothing concluded they had struck an obstacle in the roadway. From his description of the surroundings, the board of review found as a fact that the only place the accused could have stopped was at least 900 yards from the scene of the accident.

During the course of his instructions to the court, the law officer defined the essential elements of the offense of reckless operation as follows:

"(1) That the accused . . . did . . . operate a passenger car;

"(2) That [he] . . . operated [it] . . . in a reckless manner by driving at a high speed in excess of that which was reasonable and proper under the then existing road conditions, as alleged; and,

"(3) That the . . . accused thereby caused the . . . car to strike and injure the Reverend Thomas Sawbridge."

No further explanation of the term "reckless" was given. The defense counsel entered no objection to the instructions nor was a request for additional instructions submitted.

---

[2] 50 USC § 654.

The board of review declared the evidence of recklessness sufficient to sustain the finding on this charge, but held the instructions insufficient to inform the court of the degree of negligence required, and set the finding aside.

Two questions relating to this ruling are certified by The Judge Advocate General:

"a. Whether, in instructing the court-martial as to the elements of the offense of reckless driving resulting in personal injury (specification of Charge I), the law officer, in the absence of any request by the accused, was required to define the word 'reckless' as used in that portion of his instruction stating the elements of the offense charged to include, in substantially the words of the specification,

'That the said accused operated the car in a reckless manner by driving at a high speed in excess of that which was reasonable and proper under the then existing road condition . . .';

"b. If the answer to the first issue is in the affirmative, whether the law officer's failure to give such further definition in this case materially prejudiced the substantial rights of the accused."

The instructions apprised the court of each essential element of the offense charged. This satisfies the minimum requirements of Article 51(c) of the Code, supra, 50 USC § 626, and of the test laid down by us. See United States v. Grossman, 2 USCMA 406, 9 CMR 36. Although "reckless" is a word of art, it is also one of common usage with a generally accepted content of meaning. As used in Article 111 of the Code, supra, it means "culpable disregard of foreseeable consequences to others." Manual for Courts-Martial, United States, 1951. In its conventional sense, reckless is defined as "characterized by or manifesting lack of due caution; rash; utterly heedless." Webster's New International Dictionary, Second Edition. In substance these definitions are the same, and the court must be presumed to understand its general and proper significance. United States v. Dejewski, 3 USCMA 53, 11 CMR 53. Moreover, the unrebutted evidence of the manner of the accused's operation compelled a conclusion of recklessness. In this evidential setting, we are sure, no further elaboration of the term was required. Accordingly, the failure of the defense to request clarifying instructions precludes all contention of error at any stage of appellate review. United States v. Long, 2 USCMA 60, 6 CMR 60; United States v. Soukup, 2 USCMA 141, 7 CMR 17; United States v. Cobb, 2 USCMA 339, 8 CMR 139; United States v. Day, 2 USCMA 416, 9 CMR 46.

It follows from this that the first question is answered in the negative. This answer disposes of the second certified question as well.

The essential elements of the offense of leaving the scene of an accident were defined by the law officer as follows:

"(1) That [the accused] . . . was . . . the driver of a vehicle which was involved in an accident;

"(2) That said accused did wrongfully and unlawfully leave the scene of the accident without rendering assistance to the Reverend Thomas Sawbridge who had been struck and injured by the said vehicle."

The board of review held that knowledge by the operator that he had been involved in an accident was an essential element of this offense and failure to include it in the instructions was error. However, the board reasoned, since all involved at the trial, including the defense, had proceeded on the theory that the accused had hit something, no factual issue of knowledge was presented. Hence it concluded the error was not prejudicial to the accused and affirmed the findings upon this charge.

The final questions certified by The Judge Advocate General are directed to this aspect of the case:

"(c) Whether the Board of Review has correctly determined and stated the elements of the offense of leaving the scene of an accident without ren-

dering assistance (specification 1 of Charge II) to include the accused's knowledge that the vehicle had been involved in the accident alleged; and

"(d) If the answer to the third issue is in the affirmative, whether the failure of the law officer to instruct the court-martial as to this element of the offense charged may be held not to have materially prejudiced the substantial rights of the accused for the reason stated by the Board of Review, that is, that this issue was not actively contested at trial."

In his petition for review, the accused assigns as error the failure of the law officer to instruct upon knowledge as an essential element of the offense. We have granted his petition to consider this contention together with the questions certified.

While no Article of the Code, supra, expressly covers the offense of leaving the scene of an accident, ██ such conduct has long been considered of a nature to bring discredit upon the Armed Forces. As such, it is punishable as a violation of Article 134, supra. The offense is not discussed in the Manual for Courts-Martial, supra, but a form of specifying its commission is found in Appendix 6c thereof. No reference is made in the provided form to an allegation that the accused had knowledge of his involvement in an accident. Our inquiry then relates to the effect of the absence of this allegation upon the essential elements of proof in this instance.

Leaving the scene of an accident in which damage to person or property has resulted is specifically covered by statute in each jurisdiction of the United States. The acts or omissions constituting the offense are defined by these statutes, and courts determine both the duties imposed upon operators of motor vehicles and the circumstances under which these duties arise, primarily from the provisions of the statutes themselves. Many states expressly require a showing that the accused knowingly collided with or otherwise caused injuries to the person or property of another. See for example, General Laws of Massachusetts (Ter ed), Chap

90, § 24. Under such a statute, while knowledge is an essential element and must be alleged and proved as a portion of the Government's case, the knowledge required is not an absolute, positive knowledge that injury has in fact resulted. All that need be shown is that the accused was aware of facts sufficient to create in a reasonable mind the belief that injury or damage *might* have occurred. Under such circumstances, the operator is under a duty to stop and determine the actual facts and then comply with the other provisions of the statute relative to making known his name, address, etc., or rendering all possible assistance to the injured party. Woods v. State, 15 Ala App 251, 73 So 129; Bevil v. State, 139 Tex Cr 513, 141 SW2d 362; Commonwealth v. McMenimon, 295 Mass 467, 4 NE2d 246; LoBiondo v. Allan, 132 NJL 437, 40 A2d 810; People v. Roche, 49 Cal App2d 459, 121 P2d 865.

On the other hand, the statutory provisions of several states contain no express requirement that the operator was knowingly involved in a collision before the provisions became operative. Although the decisions of a large number of these states contain language indicating that knowledge must necessarily be implied as an element, careful analysis of the opinions demonstrates that such a result was neither intended by, nor necessary to, the decision. In People v. Fodera, 33 Cal App 8, 164 Pac 22, for example, the defendant was convicted of leaving the scene of an accident, and upon appeal contested the validity of the statute upon which the indictment was based. He contended that the absence from the statute of any language limiting application of its provision to those who knowingly caused their vehicle to collide with others violated the state constitution. The court held that knowledge must be implied from the requirements of the act, and noted:

". . . Moreover, section 20 of the Penal Code, which is to be read together with and into the section under review, provides that 'in every crime or public offense there must exist a union or joint operation of act and intent or criminal negligence.'"

690

In State v. Ray, 229 NC 40, 47 SE2d 494, the defendant was operating a tractor trailer along the highway when the trailer portion swerved into the side of a vehicle travelling in the same direction. The operator of the vehicle continued on without stopping. Questioned later about the accident, he asserted that he did not know he had been involved in an accident. Upon his appeal from a conviction of leaving the scene of an accident, the Supreme Court of North Carolina held that "both reason and authority declare that such knowledge is an essential element of the crime. . . . This position is expressly sustained by our statute prescribing the punishment for persons 'convicted or wilfully violating G.S. § 20–166, relative to the duties to stop in the event of accidents'."

It is evident that both courts implied the element of knowledge not simply from a consideration of the nature of the offense but in reality from the wording of other portions of their statutory provisions. Numerous other cases decided under similar statutes strongly suggest that the courts were not interested in distinguishing between an essential element and an affirmative defense. Thus, in People v. Thompson, 123 Cal App 726, 12 P2d 81, it was held that the subject of knowledge must be included in the instructions only when it is reasonably raised as an issue in the case. We are aware of no case in which a failure to instruct upon the subject of knowledge under a statute of this type was held error when the evidence clearly indicated that the accused was aware of his involvement in an accident. Manifestly, the failure to instruct upon an essential element of a crime charged is error in some degree.

The effect of the omission of the word "knowing" or "knowingly" from the type of statute under consideration is very clearly shown by the decisions of the Supreme Court of Arizona. Under Chapter 8, Title 50 of the Arizona Revised Statutes of 1913, as originally enacted, it was made a crime for one who, knowing an injury has been caused to a person or property, leaves the place where it occurs without stopping. This provision was superseded by the High-

way Code of 1927. In the latter enactment no mention was made of the subject of the driver's knowledge. Construing the result of this change, the Supreme Court of Arizona in Olson v. State, 36 Ariz 294, 285 Pac 282, held:

". . . Knowledge is not an ingredient of the offense under the new provision but a lack of it would doubtless constitute a good defense."

In State v. Masters, 106 W Va 46, 144 SE 718, the Supreme Court of West Virginia had before it an indictment drawn under the hit and run statute of that state. In answer to the contention that the omission of an allegation that the defendant was knowingly involved in the accident required dismissal of the indictment, the court stated:

". . . The statute in the instant case does not make knowledge of the accident a part of the offense, and, under the general rule, it is not necessary for the state to so allege. To hold otherwise would be to defeat the very object of the statute, namely, the protection of the person and property of the traveling public from motorists who seek to dodge all responsibility in cases of accident on the highway to which they are parties. In most cases it would be impossible for the state to prove scienter beyond a reasonable doubt, while the accident itself might properly be proven."

Our review of the conflicting positions convinces us that the better rule requires a holding that the absence of any requirement of knowledge from the statute eliminates it as an essential element. In such a situation there is no requirement that knowledge be set out in the indictment or established by the prosecution as a part of its case. This does not mean that the accused can be convicted of a violation regardless of his knowledge or lack thereof. It means simply that, when the proof indicates that the operator of a motor vehicle has been involved in a collision in which damage to person or property has resulted, he is required to stop and comply with the other sections of the statute requiring him to make known

691

his name and address, or to assist an injured person. He is not precluded from showing that no duty arose in a particular instance because of his lack of knowledge of the accident. When this defense is raised by the evidence the issue must be submitted to the triers of fact under proper instructions. Olson v. State, supra.

It is evident that the specification form set out in the Manual, supra, is ▪ predicated upon the provisions of § 40–609, District of Columbia Code. These provisions do not require knowledge on the part of an operator that he has been involved in an accident. Thus, under the authority of the cases cited above, knowledge is an affirmative defense requiring instructions only when reasonably raised by the evidence. United States v. Ginn, 1 USCMA 453, 4 CMR 45.

It is clear from the facts of this case that no issue of knowledge was raised by the evidence. The accused was aware that his windshield had been struck and shattered by some object, and he exclaimed that he had struck something in the highway. Under any view of the "hit and run statutes" a duty then arose for him to stop immediately, determine the cause of the damage, and render such assistance as was within his power to any person who might have been injured. The accused's report to the police conclusively establishes that he did not comply with this duty. He first told a palpable falsehood as to the manner in which his vehicle had been damaged, and then averred that he had stopped after recovering from the shock of the accident. Accepting the latter version as true, the court was warranted in concluding, as did the board of review, that he stopped at a point too far removed from the place of the accident to determine what had happened, or otherwise to comply with his duty. Under these circumstances, no issue of knowledge was raised by the evidence and there was no obligation upon the law officer to instruct thereon.

We are aware of the decisions of this Court in United States v. Simmons,

1 USCMA 691, 5 CMR 119; United States v. Majia, 2 USCMA 616, 10 CMR 114; United States v. Benders, 2 USCMA 620, 10 CMR 118; and other cases in which we held that, whether knowledge is considered an essential element of an offense, or merely an affirmative defense, instructions thereon are required only when the subject is reasonably raised by the evidence. While application of these cases would require a like result in this instance, we note a definite difference between the situations therein described and the circumstances of this case. In those cases, we pointed out that the difficulty in determining the category of knowledge is created by the Manual. In the instant case, no reference whatever to the requirement of knowledge is made therein.

It follows from what we have said that certified question (c), supra, is answered in the negative. In view of this, no answer to the last question submitted by The Judge Advocate General is necessary.

So much of the decision of the board of review as relates to the offense of reckless driving is reversed. The record is returned to The Judge Advocate General of the Air Force for further action not inconsistent with the views expressed herein.

Judge BROSMAN concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

I have no misgivings about our conclusion that leaving the scene of an accident is conduct of a nature to bring discredit upon the Armed Forces, and hence is an offense under Article 134 of the Code, 50 USC § 728. However, ▪ the argument made that knowledge on the part of the accused that he has been involved in an accident is not an essential element of this offense is not persuasive. On that issue I disagree with my associates. I grant that the form specification for that offense which is shown in the Appendix to the Manual does not include a separate allegation of knowledge (Manual for Courts-Mar-

tial, United States, 1951, Appendix 6b), but the issue should not be decided by the contents of a form which is intended only as a guide. The fact that a form is provided does not support a conclusion that it is comprehensive and defines adequately the substantive offense. Its purpose is to assist in preparing a specification, but I believe the elements of the offense must be determined by substantive law and not by forms. Furthermore, the assertion that the form specification has the force and effect of a punitive statute and thus delineates the elements of the offense appears to be at variance with language used in other decisions of this Court. See United States v. Soukup, 2 USCMA 141, 7 CMR 17; United States v. Smith, 2 USCMA 197, 7 CMR 73.

It might be of aid in determining what the elements of the offense are to refer to the holding of civilian authorities as we do not have a specific statute defining the crime. Certain jurisdictions, by statute, prescribe knowledge as an element of the offense, but it should require little discussion to demonstrate that decisions from those States are of little aid to us here, except to indicate that various legislatures have concluded that the crime is not committed unless the offender had knowledge of the accident. Typical of those jurisdictions are Alabama: Layfield v. State, 27 Ala App 437, 173 So 654 (1937); Arizona: State v. Lee, 53 Ariz 295, 88 P2d 996 (1939); California: People v. Moody, 93 Cal App2d 66, 208 P2d 692 (1949); Massachusetts: Commonwealth v. Bleakney, 278 Mass 198, 179 NE 400 (1932); Michigan: People v. MacPherson, 323 Mich 438, 35 NW2d 376 (1949); New Jersey: LoBiondo v. Allan, 132 NJL 437, 40 A2d 810 (1945); and New York: People v. Hakala, 270 App Div 612, 61 NYS2d 718 (1946).

The important category of cases encompasses those which hold that knowledge is an element of the offense even though not expressly made so by statute. I prefer the rationale of those cases and therefore quote from two. In Herchenbach v. Commonwealth, 185 Va 217, 38 SE2d 328 (1946), the Virginia Supreme Court first quoted the appropriate statute, which did not expressly include knowledge as an element of the offense, and then the Court continued:

"The duty imposed upon the driver of a vehicle involved in an accident is not passive. It requires positive, affirmative action; that is, to stop and give the aid and information specified.

"How can a person perform these affirmative acts unless he knows that his vehicle has struck a person or an object? Knowledge necessarily is an essential element of the crime. This does not mean that the person should have positive knowledge of the extent of the damage or injuries inflicted. It does mean that, in order to be guilty of violating the statute, 'the driver must be aware that harm has been done; it must be present in his mind that there has been an injury; and then, with that in his mind, he must deliberately go away without making himself known.' "

In State v. Ray, 229 NC 40, 47 SE2d 494 (1948), the North Carolina Supreme Court discussed the offense as defined by a statute which did not include knowledge as an element, and used the following forceful language in discussing knowledge as an element.

"It would be a manifest absurdity to expect or require the driver of a motor vehicle to perform the acts specified in the statute in the absence of knowledge that his vehicle has been involved in an accident resulting in injury to some person. Hence, both reason and authority declare that such knowledge is an essential element of the crime created by the statute now under consideration."

Many other jurisdictions have announced principles which support the rule announced in the two foregoing quotations. See, for example, Pennsylvania: Commonwealth v. Hyman, 117 Pa Super 585, 178 Atl 510 (1935), stating, "knowledge must be shown on the part of the owner and driver of a vehicle that he has injured some person or damaged the property of another

user of the highway"; Texas: Bevil v. State, 139 Tex Cr 513, 141 SW2d 362 (1940), holding, "It was the duty of the appellant to stop if he knew that he had struck the automobile in question"; and New Mexico: State v. Kuchan, 47 NM 209, 139 P2d 592 (1943), announcing, "we are not here called upon to determine whether anything more than knowledge that the car appellant was driving was involved in an accident would be required under the statute in question."

If there are a number of cases hold- ing that knowledge of the accident is not an element of the offense, I have had little success in finding them. While the majority opinion states flatly that under most State statutes which do not expressly include knowledge as an ele- ment of the offense it is generally held that lack of knowledge is an affirmative defense, I find a paucity of authority cited to sustain the statement. The case of Olson v. State, 36 Ariz 294, 285 Pac 282 (1930) is cited, but there are sev- eral reasons why that case has little in- fluence on our problem. First, the por- tion of the opinion stating that knowl- edge of an accident is not an element of the offense of leaving the scene of an accident was clearly not necessary to that opinion. Second, the court was interpreting a statute which had amend- ed a previous enactment. The earlier statute had included knowledge as an element while the amending act omitted it. By statutory construction the court concluded the legislature had intended to eliminate knowledge as an element. Third, after Olson had committed the offense, but before his case reached the Supreme Court, the Arizona legislature again amended the particular statute involved so as to insert knowledge as an element, and the latest case announces a principle consistent with the latest enactment, State v. Lee, supra. The majority of the Court rely heavily upon the case of State v. Masters, 106 W Va 46, 144 SE 718 (1928), but the issue which here concerns us was not set at rest in that opinion. After indictment for failure to stop following an acci- dent, the defendant demurred and moved to quash the indictment. The de- murrer was sustained on the grounds that the indictment failed to allege an offense and that the statute making pun- ishable the act of failing to stop and render assistance following an accident was unconstitutional. Judgment dis- charging the defendant was entered, and the State appealed to the West Vir- ginia Supreme Court. The statute in question was held to be not unconstitu- tional because of vagueness. That en- actment did not expressly include knowl- edge as an element of the offense and the indictment was drawn in the language of the statute. In the light of those facts, the indictment was held to be sufficient to allege an offense. Accord- ingly, the judgment of the lower court was reversed. Essentially, therefore, the case stands for no more than the proposition that an indictment drawn in the terms of a constitutional statute is ordinarily sufficient to allege an of- fense. That this may be the utmost thrust of that opinion is rendered more likely by the fact that I have been un- able to find any case from that juris- diction which cites the decision for any proposition more far-reaching than the one above set forth. State v. Keiffer, 112 W Va 74, 163 SE 841 (1932); State v. Livesay, 127 W Va 579, 34 SE2d 24, 27 (1945). Laying aside the Olson case, supra, and the Masters case, supra, I have been unable to find a single ju- risdiction which has held that knowl- edge of involvement in an accident is not an essential element in this type of offense where the pertinent statute mentions it in defining the crime or is silent on the subject.

In cases of this kind an accused may be punished for leaving the scene of an accident regardless of whether he con- tributed in bringing about the accident. He may be entirely free from fault, and the other party may be solely responsi- ble for the collision, but he may not leave without committing an offense. That public policy requires such a crim- inal sanction, I have no doubt. But I believe it unreasonable to saddle an in- dividual with responsibility for the crime unless the Government establishes that he had knowledge of the accident either by direct or circumstantial evi- dence. The prosecution is not placed at an unfair disadvantage if it is required

to establish affirmatively that an accused was aware of his involvement in an accident and certainly it is no burden to instruct the court-martial members that they must so find. To my mind judicial precedent, logical analysis, and good sense combine to compel the conclusion that knowledge is an element of this offense.

The facts have been marshalled with stunning force in the principal opinion to show that knowledge was ██ not an issue raised at the trial. I reach the same result, but not by the same reasoning. A plea of not guilty places in issue every essential element of the offense. However, an accused can, by judicial confession, trial tactics, stipulation, and perhaps otherwise, remove an element from dispute so it is no longer in issue. In my judgment, the accused by his trial tactics, theory of the case, and the open court admissions of his counsel eliminated any necessity for the law officer of the court-martial to consider knowledge when outlining the elements of the offense. The record reflects the following sequence of events. The prosecution established without contradiction that accused knew he was involved in a collision. The element was established by the extrajudicial statements of the accused to a British Constable, and to the Military Police; by his reporting the accident to protect his insurance; by his voluntary preparation of a formal police report which he filed at the Harrow-Wealdstone Police Station; and by the testimony of his companion. On cross-examination, defense counsel took pains to have witnesses emphasize that accused had knowledge of the accident and not without purpose. His defense was that the accused knew he had an accident, stopped, went back, investigated, found no evidence of the nature of the object struck, and then drove on. An excellent defense, if believed in full, but highly inconsistent if knowledge is denied.

When it came time for accused to go forward with his case his counsel made an opening statement as follows:

"The defense will have a short opening statement.

"We intend to show—as you know, the burden is not necessarily on the defense—we have shown, from statements of previous witnesses on cross-examination; some of the information that was brought out on our cross-examination of prosecution witnesses, and the witnesses the defense has brought before this court, that the accused possibly did have an accident; that he made every effort to stop; he did stop, and did report the accident to the proper authority."

After having the members of the court-martial view the car involved, defense counsel called the passenger, had him confirm his previous testimony, and clinched the question of knowledge. The testimony was not weakened by the closing argument and the following quotations are taken from the defending counsel's speech:

"Going on, we find that according to Captain Eagleson's statement that he has made to various people—Captain Wytock—that the accused did stop and made an utterance, 'Christ, Harry, we hit something.' . . . I realized that the evidence has brought out considerable damage to this car. Further evidence has indicated that the automobile was so damaged that it was difficult to operate and that the light itself, the lefthand light, was damaged. Yet everything seems to indicate that the accused and his cohort made every conceivable effort to determine what they had done. They stopped, a little down the road after the initial stop. . . . All they can say, they were in the pub; they left and they stopped; they did stop, and I am inclined to believe Captain Wytock. . . . I am sure, by the cooperation of Captain Wytock, that they did stop, and they did go back. They did everything and anything a reasonably prudent person would do under the circumstances."

A good argument could be made that implicit in the law officer's instructions is a requirement that the court-martial find the accused had knowledge of the

**695**

accident. In this case that is not important, as when an accused makes a conscious choice to rely on one theory in the trial of a case, he cannot change that theory on appeal. If that theory consists of conceding that one element is not in issue, then we should not be concerned with its absence from an instruction.

For the reasons set out, I can find no sound basis for holding that the law officer erred because he failed to require a court-martial to find a fact that the accused concedes. Moreover, an accused cannot now contend forthrightly that had the court-martial members been informed that knowledge was an element, there is fair possibility they might have found he did not know he was involved in a collision where he has conceded the issue at trial.