UNITED STATES, Appellee

v.

Marvin D. SHEARER, Hull Maintenance Technician Fireman Apprentice, U.S. Navy, Appellant.

No. 95–0559.
Crim. App. No. 94 0343.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 30, 1996.

Decided Aug. 29, 1996.

For Appellant: *Major David S. Jonas, USMC* (argued); *Lieutenant Estela I. Velez, JAGC, USNR.*

For Appellee: *Lieutenant Jonathan W. Haray, JAGC, USNR* (argued); *Colonel Charles Wm. Dorman, USMC,* and *Commander D.H. Myers, JAGC, USN* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

On November 15, 1993, appellant was tried by a special court-martial at the United States Naval Legal Service Office, Yokosuka, Japan. In accordance with his pleas, he was found guilty of unauthorized absence (20 days), wrongful appropriation, and fleeing the scene of an accident, in violation of Articles 86, 121, and 134, Uniform Code of Military Justice, 10 USC §§ 886, 921, and 934, respectively. The military judge sitting alone sentenced him to a bad-conduct discharge, confinement for 60 days, forfeiture of $540.00 pay per month for 2 months, and reduction to pay grade E–1. On February 22, 1994, the convening authority approved the sentence as adjudged; but pursuant to the terms of a pretrial agreement, he suspended all confinement (which had been deferred) for a period of 12 months from the date of trial. The Court of Crimi-

nal Appeals affirmed the findings and sentence without opinion on December 30, 1994.

On June 1, 1995, this Court granted appellant's petition for review on the following specified issue:

WHETHER APPELLANT'S PLEA OF GUILTY TO CHARGE III AND ITS SPECIFICATION (LEAVING THE SCENE OF AN ACCIDENT) WAS IMPROVIDENT. *SEE UNITED STATES V. WALUSKI,* 6 USCMA 724, 21 CMR 46 (1956).

We hold that appellant's guilty-plea responses adequately support his pleas of guilty to being a principal by aiding and abetting another sailor's flight from the scene of an accident in violation of Article 134. *See* Art. 77, UCMJ, 10 USC § 877; *see generally United States v. Waluski, supra,* and *United States v. Eagleson,* 3 USCMA 685, 14 CMR 103 (1954).

Appellant was charged, *inter alia,* with the following offense in violation of Article 134:

Specification: In that [appellant] was a passenger in a vehicle at the time of an accident in which said vehicle was involved, and having knowledge of said accident, did at 823–6 Hasuwa-men, Saza-cho, Sasebo, Japan, on or about 15 June 1993, *wrongfully leave the scene of the accident without making Hull Technician Fireman Cory D. Atwood, U.S. Navy, the driver's identity known.*

(Emphasis added.)

The military judge in conducting the providence inquiry informed appellant of the theory of his legal liability as a principal (an aider and abettor) under Article 77. The following occurred:

MJ: Now in conjunction with this, I'm going to advise you of the concept of aiding and abetting another in the commission of an offense. I'm sure you have discussed this with your counsel. *This will apply—the definition that I'm going to give you on aiding and abetting will apply also to the specification under Charge III which I will give you the elements for in just a few minutes.* In regards to being an aider and an abettor, you are advised that any person who

actually commits an offense is referred to under the law as the perpetrator of that offense. Every perpetrator of an offense is a principal to the commission of that offense. Anyone who knowingly and willfully aides and abets another in committing an offense is also a principal and is equally guilty of the offense. An aider and abettor must knowingly and willfully participate in the commission of the crime as something he wishes to bring about, aid, encourage, or incite the person to commit the criminal act. Mere presence at the scene of the crime is not enough, nor is failure to prevent the commission of an offense. There must be an intent to aide or encourage the person to commit the crime.

If you witnessed the commission of the crime and had a duty to interfere but did not because you wanted to protect or encourage the alleged perpetrator then you are a principal.

Do you understand these definitions that pertain to being an aider and abettor?

ACC: Yes, sir.

MJ: And how that makes a person a principal, a co-perpetrator of an offense?

ACC: Yes, sir.

(Emphasis added.)

Appellant and the judge then discussed the facts of this case giving rise to his guilty plea, as follows:

MJ: Now I want to go over these offenses with you. Let's take them in chronological order. Let's start with the specification under Charge II. Why don't you tell me now in your own words what happened on the 15th of June 1993, regarding this white Toyota pickup truck.

ACC: Well, sir, my friend and I got drunk in Sasebo and we ended up in a mall near the base. My friend found a pickup truck with the keys in it and we got in and drove around Sasebo for a while. I fell asleep and when I woke up we had been in an accident. We were then confronted by the owners of the vehicle and we denied having to do anything [sic] with the accident. So we got

back into the car and left. We went to a nearby store and that's where we were apprehended by the police.

After the accident we drove a little bit and we traded—I was going to drive because he was driving recklessly and then we traded back soon after that.

\*    \*    \*

MJ: Let's look now at the specification under Charge III. You've told me about the accident. Why don't you explain that in a little more detail. Approximately where were you when this accident took place?

ACC: I don't know exactly, sir.

MJ: Was it still in the town of Sasebo?

ACC: 823–6 Hasuwa-men, Saza-cho, Sasebo, Japan, sir.

MJ: And did you say that you were sleeping in the car when you first became aware of this accident?

ACC: Yes, sir.

MJ: To start with that. Tell me again exactly what happened when you first became aware of the accident.

ACC: We had parked, sir, then I sat up, looked around and got out of the vehicle. I had noticed two people that had come out of the house, so we both approached them and we could not understand what they were saying but, they were pointing at their car.

MJ: And where was their car?

ACC: On the street as you turn into the driveway.

\*    \*    \*

MJ: So tell me again now, what happened after you spoke with these two individuals?

ACC: I walked back——

MJ: What did you tell these two individuals?

ACC: I didn't say anything to them. I could not understand them, sir.

MJ: What about Fireman Atwood?

ACC: I don't know if he said anything to them or not, sir.

MJ: Did you do anything to indicate that it was your truck and that you were the drivers—the occupants of the truck that had hit their car?

ACC: No, sir.

MJ: What did you do?

ACC: I walked back and got into the truck.

MJ: Then what did you do?

ACC: Atwood came back and we drove away.

MJ: Did you present the owners of the car with any information about yourself or Fireman Atwood?

ACC: No, sir.

MJ: What was your intent at the time, did you intend to provide them with information?

ACC: No, sir.

MJ: What was your intent?

ACC: To try and find a phone and call back to our ship or something.

MJ: What did you do?

ACC: We couldn't speak to them, sir, because we don't know Japanese.

MJ: So what did you do?

ACC: We went to a nearby store.

MJ: And then what?

ACC: To ask directions where to look for a phone.

MJ: Then what did you do?

ACC: Then the Japanese police apprehended us in the parking lot.

MJ: Had you reported the accident to anyone?

ACC: No, sir.

MJ: Did you report it to the Japanese police?

ACC: No, sir.

\*    \*    \*

MJ: And are you admitting that the truck was involved in an accident with the car that was parked on the side of the street?

ACC: Yes, sir.

MJ: And you knew that the truck had been involved with this accident—in this accident with this car?

ACC: Yes, sir.

MJ: Do you know that for sure, when you were awoken from your sleep?

ACC: I was confused at first, sir, but I found out soon after.

MJ: When the two people came out of the house and were pointing at their car, were they also pointing at your truck?

ACC: I don't believe so, sir.

MJ: When they came out and were pointing at their car, did that indicate to you that there had been an accident?

ACC: Yes, sir.

MJ: And what did you believe had caused that accident at that time?

ACC: Our vehicle that we were in.

MJ: The truck that you were in?

ACC: Yes, sir.

MJ: Did you discuss it with your friend, Fireman Atwood?

ACC: No, sir.

MJ: Neither of you said anything about the truck having had an accident with the car?

ACC: I don't remember, sir.

MJ: *Did you understand at that time that you had a responsibility to provide information to the people whose car you had hit or to the police about the accident?*

ACC: *Yes, sir.*

MJ: *Did you do that?*

ACC: *No, sir.*

MJ: Are you admitting here today that you did leave the scene of the accident as you have told me without making Fireman Atwood's identify known?

ACC: Yes, sir.

MJ: And did you make your own identity known?

ACC: No, sir.

MJ: Are you admitting that your departure from the scene of the accident without making either your identity or Fireman Atwood's identity known was wrongful and unlawful?

ACC: Yes, sir.

MJ: Did you feel that you had any legal excuse for doing that?

ACC: No, sir.

MJ: Now you've said you had trouble communicating with these people, would that have prevented you from writing out your names and telephone numbers or something on a piece of paper and leaving it with these people?

ACC: No, sir.

MJ: Could you have done that if you had wanted to?

ACC: Yes, sir.

MJ: And, you didn't do that?

ACC: No, sir.

\*    \*    \*

MJ: And last, going back to the Specification under Charge III for just a moment just to make sure that you understand this aiding and abetting. *So at the time that you left the scene of the accident, was it your intent at that time to not leave the information of your friend, that your friend was driving the truck or the information about yourself as a way of protecting or encouraging him?*

ACC: *Yes, sir.*

MJ: In other words, you knew at the time that you could provide that information if you wanted to, is that right?

ACC: Yes, sir.

MJ: *But you chose to work hand in hand with Fireman Atwood and not tell anybody that he was the driver or leave any information about him or yourself so that he would not be arrested as the perpetrator?*

ACC: *Yes, sir.*

MJ: So are you admitting then that you were an aider and abettor to him, you were a co-principal in his not leaving information about himself being the driver of the truck?

ACC: Yes, sir.

(Emphasis added.)

——

Appellant asserts that his guilty pleas to the charge of fleeing the scene of an accident were improvident. Specifically, he avers that he was not the driver of the vehicle involved in the accident and he did not contribute in any way to its occurrence. He also notes that the record does not establish that he had any legal duty to ensure that Fireman At-

wood, the driver of the vehicle, leave identification at the scene of the accident. He finally asserts that the record of trial does not otherwise "establish that he truly aided and abetted" Fireman Atwood in leaving the scene of an accident without providing proper identification. Final Brief at 6. We disagree.

An inquiry into the providence of a guilty plea must establish the factual circumstances admitted by the accused which "objectively" support his plea. *United States v. Higgins*, 40 MJ 67, 68 (CMA 1994), *quoting United States v. Davenport*, 9 MJ 364, 367 (CMA 1980). A guilty plea should not be accepted by a military judge if a military accused asserts "matter inconsistent with the plea." Art. 45(a), UCMJ, 10 USC § 845(a); *see. United States v. Higgins, supra, citing United States v. Penister*, 25 MJ 148, 151 (CMA 1987). Once accepted as provident, a guilty plea should be set aside on appeal only if the record fails to support the plea or contains "evidence 'in substantial conflict' with" the guilty plea. *United States v. Higgins, supra, citing United States v. Stewart*, 29 MJ 92, 93 (CMA 1989); *United States v. Prater*, 32 MJ 433, 436 (CMA 1991).

This Court has held that flight from the scene of an accident by the driver of an involved vehicle without providing proper identification is a violation of Article 134 of the Code. *See generally United States v. Eagleson*, 3 USCMA at 690–91, 14 CMR at 108–09. The President has also explained that a passenger in a vehicle involved in an accident may be guilty of this offense in certain circumstances. They are:

(1) That the accused was a passenger in a vehicle which was involved in an accident;

(2) That the accused knew that said vehicle had been in an accident;

(3) That the accused was the superior commissioned or noncommissioned officer of the driver, or commander of the vehicle, and wrongfully and unlawfully ordered, caused, or permitted the driver to leave the scene of the accident without (providing assistance to the victim who had been struck (and injured) by

the said vehicle) (or) (providing identification); and

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Para. 82b(2), Part IV, Manual for Courts-Martial, United States, 1984.

Only one judge of this Court has agreed with the above explanation of this offense by the President. *See United States v. Waluski*, 6 USCMA at 732, 21 CMR at 54 (Latimer, J., concurring in the result). Nevertheless, it is well established that a person who aids or abets commission of an offense by another is a principal as a matter of military law. Art. 77. Moreover, two judges of this Court have particularly held that if a non-senior passenger aids and abets the driver in leaving the scene of an accident, the passenger can also be found guilty of this military criminal offense. *Waluski*, 6 USCMA at 732, 21 CMR at 54 (Quinn, C.J., stating that "a passenger's responsibility for fleeing the scene of a vehicular accident depends upon whether he acted as an aider and abettor to the driver"); *id.* at 733, 21 CMR at 55 (Latimer, J., concurring in the result). Accordingly, the question before us is whether appellant's admitted conduct constituted him a principal. *See* paras. 82c(3) and 1, Part IV.

In addressing this question, we first note that appellant admitted his guilt to the offense of leaving the scene of an accident without providing proper identification based on his status as an aider and abettor under Article 77. In other words, he admitted that he encouraged and assisted Fireman Atwood, the driver of the vehicle, to leave the scene of the accident without providing proper identification.

Appellant now contends that the record provides no support for his admission in terms of particular conduct on his part which encouraged or assisted Fireman Atwood in his misdeed. Specifically, appellant asserts that he had no duty to report Fireman Atwood's or his own identity at the scene of this accident. Appellant contends that "there is

no indication in the record that [he] had a duty to interfere, or was aware that he had such a duty, at the time the offense was committed." Final Brief at 6. He also cites the opinion of Chief Judge Quinn in *United States v. Waluski,* 6 USCMA at 732, 21 CMR at 54, for the proposition that no legal duty existed for him as a non-senior passenger to report the identify of the driver of the vehicle. Final Brief at 7. Finally, he asserts that the record does not indicate any other encouragement or assistance by him of Fireman Atwood's offense. *Id.* at 8–9.

We note that this Court and the President have agreed to the following:

In some circumstances, inaction may make one liable as a party, where there is a duty to act. If a person (for example, a security guard) has a duty to interfere in the commission of an offense, but does not interfere, that person is a party to the crime if such a noninterference is intended to and does operate as an aid or encouragement to the actual perpetrator.

Para. 1b(2)(b), Part IV, Manual, *supra; United States v. Ford,* 12 USCMA 31, 33, 30 CMR 31, 33 (1960). Appellant himself admitted that he had a duty and knew he had a duty to report Fireman Atwood's identity as the driver of the vehicle involved in the accident to the Japanese. "Post-trial speculation" as to the precise source of this duty need not be "countenanced" at this late stage of the proceedings. *See United States v. Harrison,* 26 MJ 474, 476 (CMA 1988). Moreover, the prosecution may have been induced by the defense plea to forgo presenting its entire case concerning appellant's duty to report accidents in this foreign country. *See United States v. Burnette,* 35 MJ 58, 60 (CMA 1992)); *see generally United States v. Dupree,* 24 MJ 319, 322 (CMA 1987).

In any event, there are other circumstances found in the record which support appellant's conviction for encouraging and assisting Fireman Atwood's crime. *See generally United States v. Burroughs,* 12 MJ 380, 384 (CMA 1982). In this regard the record shows that appellant initially assisted his friend in his cover-up by forming a joint front of denial with Fireman Atwood in the face of the angry accusations of the Japanese civilians. *See United States v. Speer,* 40 MJ 230 (CMA 1994). Later, he led the way in retreat from these accusers by returning to their stolen motor vehicle, an act which set the stage for their actual flight from the accident site. *See United States v. Knudson,* 14 MJ 13 (CMA 1982). Finally, although he characterized his action as an exercise in traffic safety, appellant also admitted taking the driver's seat from Fireman Atwood, an act further obscuring the latter's identification as the involved driver. *See United States v. Pritchett,* 31 MJ 213, 219 (CMA 1990).

In conclusion, we note that appellant admitted that, under the circumstances of his case, his conduct "prejudice[d] ... good order and discipline in the armed forces" and "discredit[ed] the service and the United States Navy and lower[ed] it in public esteem." We agree with his assessment of his own guilt and hold that the record of trial in its entirety supports his judgment. Thus, we find no merit in appellant's post-trial claim of improvidence. *See generally United States v. Harrison, supra.*

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Chief Judge COX and Judge CRAWFORD concur.

GIERKE, Judge (concurring in part and in the result):

I agree with Senior Judge Everett that the record does not show a duty to report Atwood's involvement in the accident. The theory of the prosecution and the focus of the plea inquiry was that appellant was a principal by aiding and abetting. *See* Art. 77, Uniform Code of Military Justice, 10 USC § 877.

*United States v. Harrison,* 26 MJ 474 (CMA 1988), cited by the majority, did not overrule *United States v. Care,* 18 USCMA 535, 40 CMR 247 (1969), or eliminate the requirement in RCM 910(e), Manual for Courts–Martial, United States

(1995 ed.),* that the military judge satisfy himself "that there is a factual basis for the plea." Appellant's conclusory admission that he had a legal duty to report does not satisfy the requirement that facts, not legal conclusions, be elicited from the accused to support the guilty plea.

Unlike Senior Judge Everett, I am satisfied that the military judge elicited a factual basis for appellant's guilt as an aider and abettor. Accordingly, I concur in the majority's rationale that appellant was an aider and abetter, and I concur in the result.

### EVERETT, Senior Judge (dissenting):

Shearer, who was a passenger in the car which had been involved in the accident, had no duty to report the accident or to prevent Fireman Atwood from leaving the scene. After all, Shearer was not superior in rank, and he did not play any part in causing the accident.** Of course, if appellant encouraged Atwood to leave the scene or drove the car away for him, he would be liable as a principal on a theory of aiding and abetting. See Art. 77, Uniform Code of Military Justice, 10 USC § 877. However, my reading of the colloquy between appellant and the military judge convinces me that no such encouragement or assistance was provided or at best that the record is too confused on this point to permit acceptance of the plea. Certainly, nothing I have found in the providence inquiry constitutes a clear admission that appellant persuaded or urged Atwood to leave the scene. Merely riding with him after the accident—or driving the car at a later time—does not suffice.

The majority opinion suggests that appellant's plea of guilty may have "induced" the prosecution not to present "its entire case concerning appellant's duty to report accidents in this foreign country." 44 MJ at 335. If this statement is meant to suggest that the language of the specification would permit appellant's conviction for failure to comply with a duty imposed by Japanese law, I must disagree vehemently. The Uniform Code does not incorporate foreign law. Likewise, I cannot sustain the conviction by speculating that some American military regulation may have supplemented Article 134, UCMJ, 10 USC § 934, by imposing a duty to report accidents in Japan. Finally, to me it seems incongruous to sustain a conviction of a passenger who understood no Japanese on the premise that he should have identified Atwood as the driver to a crowd of Japanese who spoke no English. In short, appellant's testimony during the providence inquiry was far more consistent with his innocence than with his guilt. Therefore, I respectfully dissent.

---

* The version contained in this edition of the Manual for Courts–Martial was in effect at the time of this trial.

** According to appellant's account, he was asleep at the time of the accident.