BAKER, Judge
(dissenting):

Introduction

There are three issues in this case. First, is the military offense of “possession of visual depictions of what appears to be a minor engaging in sexually explicit conduct” charged under Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006), directly analogous to either 18 U.S.C. § 2252(4) or 18 U.S.C. § 2252A(a)(5)?[1] Second, does the fact that this question arises in the context of a guilty plea affect the analysis and outcome? Finally, if not, is there an applicable “punish[ment] ... authorized by the custom of the service”? Rule for Courts-Martial (R.C.M.) 1003(c)(l)(B)(ii).
*46 Certainly with respect to § 2252A, the first question is definitively resolved by the amendments to the Child Pornography Prevention Act of 1996 (CPPA)[2] in the wake of Ashcroft v. Free Speech Coalition.[3] Those amendments changed the definition of child pornography contained in 18 U.S.C. § 2256(8)(B). At the time of Appellant’s court-martial these amendments to the CPPA criminalized the possession of any visual depiction “that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct ... such that an ordinary person viewing the depiction would conclude that the depiction is of an actual minor engaged in sexually explicit conduct.”[4] In this case, Appellant pleaded guilty to possessing images that “appeared to be” indistinguishable from minors engaged in sexually explicit conduct; Appellant also stipulated to possessing pictures and video of known child pornography victims including a series involving vaginal, oral, and anal abuse. The stipulated conduct factually describes the elements of 18 U.S.C. § 2252A(a)(5). When charging under clauses (1) or (2) of Article 134, UCMJ, there is no requirement that the specification allege the elements of an offense using the verbatim language of a federal statute.
Further, the analysis regarding the import of Ashcroft in the context of this case is more nuanced than the majority presents, whether referencing either § 2252 or § 2252A. The Supreme Court did not hold that the words “appears to be” were unconstitutional. It held that in the context of the CPPA as written at that time, these words reached too far in light of the Court’s prior case law involving pornography and the First Amendment as well as the risk that these words might also reach legitimate expressions in fine art and literature. What “appears to be” means in Appellant’s specification is a question of plain English. It should be assessed in the context of Title 18 of the United States Code, as written at the time of Appellant’s court-martial in 2009, with the benefit and knowledge of Ashcroft’s constitutional limitations.
In this context, the CPPA is directly analogous to the offense with which Appellant was charged and to which he providently pleaded guilty to committing. Therefore, it served as lawful reference for determining the maximum period of confinement for Appellant’s offense. As a result, I respectfully dissent.

Discussion

The essence of the majority’s position is that Ashcroft “specifically held that § 2252A was unconstitutionally overbroad to the extent it prohibited the possession of what ‘appears to be,’ rather than actual, child pornography.” United States v. Beaty, 70 M.J. at 43-44. Further, Congress amended the statute and removed this language. Id. at 43-44. Therefore, according to the majority, use of these words in a military criminal allegation charged under clauses 1 and 2 of Article 134, UCMJ, precludes reliance on § 2252A in determining the maximum period of confinement for this offense: because it is not an offense in civilian context it cannot be analogous to any offense in the military.
I disagree for each of the distinct reasons below. In my view, the Supreme Court’s concern in Ashcroft was not the mere words, “appears to be.” Rather, the Court was concerned with the fact that these words, in the context of the statute as written at the time, permitted the statute to be read and applied in too broad a manner — potentially extending the reach to images that had been determined to be protected speech under previous case law. Ashcroft, 535 U.S. at 246, 122 S.Ct. 1389.
This is evident in the Court’s analysis of § 2256(8)(B), where the offending phrase appeared. The Court looked to Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and New York v. Ferber, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), to observe with respect to obscenity:
*47 [U]nder [Miller], the Government must prove that the work, taken as a whole, appeals to the prurient interest, is patently offensive in light of community standards, and lacks serious literary, artistic, political, or scientific value. The CPPA, however, extends to images that appear to depict a minor engaging in sexually explicit activity without regard to the Miller requirements.
Ashcroft, 535 U.S. at 246, 122 S.Ct. 1389 (citations omitted). Regarding Ferber, the Court noted that Ferber upheld a prohibition on the distribution and sale of child pornography, as well as its production, because these acts were “ ‘intrinsically related’ to the sexual abuse of children.” Id. at 249, 122 S.Ct. 1389. It concluded that Ferber “reaffirmed that where the speech is neither obscene nor the product of sexual abuse, it does not fall outside the protection of the First Amendment.” Id. at 251, 122 S.Ct. 1389. Thus, although the Court struck down this provision of the CPPA, it was not the literal phrase “appears to be,” read in a vacuum, that posed the problem.
Further, it was on First Amendment grounds that the Court struck the provision containing the offending phrase. But long ago the Supreme Court recognized the distinction between the First Amendment protections of military members as compared with members of civilian society. In United States v. Forney, the majority opinion explicitly noted this in the child pornography context: “That the possession of virtual child pornography may be constitutionally protected speech in civilian society does not mean it is protected under military law.” 67 M.J. 271, 275 (C.A.A.F.2009) (opinion announcing the judgment of the Court). This means that the scope of punishable child pornography is broader than that punishable under the CPPA. Thus, the relevant question is not whether the CPPA punishes images that appear to be child pornography, but whether it punishes the possession of child pornography, period. While in civilian law, the ae-commodation of First Amendment concerns may require distinctions between actual and virtual child pornography to avoid over-breadth, Ashcroft, 535 U.S. at 251, 122 S.Ct. 1389, in the military the First Amendment context is different and the prohibition on possessing images depicting child pornography does not necessarily result in comparable concerns of overbreadth. This is consistent with the Supreme Court’s assertions that invalidation due to overbreadth should be used sparingly. See e.g. Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).
The fact that the military may define child pornography more expansively in the context of military life than the CPPA may do in the context of civilian society, does not mean the offenses are not analogous for the purpose of determining the maximum authorized confinement for the offense. Analogous does not mean “the exact same.” In United States v. Blevens, for example, this Court held that a statute was sufficiently analogous as to be “an appropriate frame of reference for judging the seriousness of the offense charged, and for measuring the punishment” based on the fact that “[t]he evil against which the [statute] protects is essentially the same as the evil inherent in the accused’s conduct.” 5 C.M.A. 480, 492, 18 C.M.R. 104, 116 (1955).[5]
Blevens is squarely on point: as in the present ease, the offense was not an enumerated offense, was neither included in nor closely related to such an offense and was not otherwise listed in the MCM at the time. This Court upheld the use of an analogous statute at sentencing based on the “evil” the statute was to address. Blevens remains valid precedent and the majority’s reason for discarding it is unpersuasive. The Blevens Court explicitly stated that the concept of a closely related listed offense was not the basis for its ultimate holding that “reference to the Smith Act for the purpose of assessing punishment is entirely proper.” Id.
*48 The phrase “appears to be,” outside of the context of § 2256 of the CPPA as written at the time of Ashcroft, has no significance beyond its ordinary meaning. Consequently, as a matter of logic with respect to the offense at issue in this case, such images appear to be what they depict. They continue to “appear to be” child pornography unless or until the Government proves them to meet the legal definition (or fails to do so), or the accused admits that they are what they depict.
Congress’s amendment of § 2256 in the wake of Ashcroft further supports the point. Indeed, it definitively resolves the issue as to what is analogous. At the time of Appellant’s court-martial, the definition of child pornography contained in § 2256(8)(B) stated:
(8) “child pornography” means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—
(B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduet[.]
18 U.S.C. § 2256(8)(B) (emphasis added). Later in subsection (11), the statute defines indistinguishable as follows:
the term “indistinguishable” used with respect to a depiction, means virtually indistinguishable, in that the depiction is such that an ordinary person viewing the depiction would conclude that the depiction is of an actual minor engaged in sexually explicit conduct. This definition does not apply to depictions that are drawings, cartoons, sculptures, or paintings depicting minors or adults.
18 U.S.C. § 2256(11) (emphasis added). These statutory definitions clearly envision coverage of images that are depictions of minors engaged in sexually explicit conduct, and also depictions that appear to an ordinary person to be so. It is clear too that both so-called “virtual” images and “real” images are considered to be child pornography for the purpose of military prosecutions under Article 134, UCMJ. See United States v. Brisbane, 63 M.J. 106, 116-17 (C.A.A.F.2006); United States v. Mason, 60 M.J. 15, 20 (C.A.A.F.2004); Forney, 67 M.J. at 274-75. It follows then, that the phrase “appears to be” could denote child pornography with known child victims, as well as depictions that an ordinary person would conclude are of a minor engaged in sexually explicit conduct.[6] The majority, however, assumes that use of the phrase “appears to be” necessarily refers back to the version of the CPPA in effect at the time Ashcroft was decided, rather than to the version of the statute in effect at the time the offense in this case was charged. As a result, the majority’s position assumes that the charge was drafted with reference to the specific statutory language that was found unconstitutional in Ashcroft as opposed to having been drafted in a descriptive manner. Such a presumption might be well founded if there was a requirement to incorporate statutory language verbatim into the charging document; but there is no such requirement. “A specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication.” R.C.M. 307(c)(3).
All of this notwithstanding, in the guilty plea context, reliance on exactly what the accused admits during the plea inquiry removes any issue or doubt and determines the maximum authorized punishment. This is, or was, settled law in this Court. In United States v. James, 55 M.J. 297 (C.A.A.F.2001), decided before Ashcroft, the accused pled guilty to possession of child pornography un *49 der 18 U.S.C. § 2252A. The issue was whether or not the definition of child pornography contained in that version of the CPPA was constitutional. Following the U.S. Court of Appeals for the First Circuit and other circuits, we determined that the definition was constitutional. Ashcroft overruled this aspect of James. In James, however, we further held that, “even if the First Circuit’s approach to 18 U.S.C. § 2252A is not followed” the conviction would be valid based on the fact that “Appellant’s admissions ‘objectively support’ his pleas of guilty to violations of the more narrowly construed statute directed at sexual pictures of actual minors.” James, 55 M.J. at 300. We included a citation to United States v. Shearer, 44 M.J. 330 (C.A.A.F.1996), for the proposition that “[a]n inquiry into the providence of a guilty plea must establish the factual circumstances admitted by the accused which ‘objectively’ support his plea.” James, 55 M.J. at 300 (quoting Shearer, 44 M.J. at 334).
In the present case, as the majority notes, Appellant’s plea inquiry revealed that he admitted that the images he possessed were of real children; in fact, Appellant stipulated that “[t]he National Center for Missing and Exploited Children (NCMEC) reviewed the files and identified 14 unique images and nine unique videos on the Accused’s computer that contained known child pornography victims.” He further stipulated that “[f|ive of the NCMEC-identified images and five videos on the Accused’s computer were from the “Vicky Series’ and showed the sexual abuse of a child victim named [KF] by the victim’s father, who sexually abused the victim orally, vaginally and anally when she was between 10 and 11 years of age.” A statement from KF was attached to the stipulation.
In sum, Appellant was charged with possessing images that were indistinguishable from and thus appeared to be child pornography; there was good reason for this, because Appellant stipulated that the images he possessed consisted of actual children in sexual acts with adult males. As a result, it is my view that the offense alleged in this case is more than just analogous to the offenses set forth in 18 U.S.C. §§ 2252 and 2252A — it is the same offense.
I would decide this case on this basis. However, the majority not only maintains that the charge was not analogous to the amended CPPA, it has also determined that there was no punishment for this offense authorized by military custom. I take issue with this assertion as well. In my view, there is a need to investigate military practice in this area before concluding there is no service custom. The majority has not done so.
Custom arises from “long established practices which by common usage have attained the force of law in the military or other community affected by them.” MCM pt. IV, para. 60.c.(2)(b) (2008 ed.).[7] In United States v. Leonard, 64 M.J. 381, 383 (C.A.A.F.2007), we said that it was “at best an open question” whether there was a service custom regarding punishment for receiving child pornography under Article 134(1) or (2) because the proliferation of child pornography via new media technology was “a relatively recent development.” The technology that child pornography consumers are using may be new, but the underlying issue — “prevention of sexual exploitation and abuse of children,” Ferber, 458 U.S. at 757, 102 S.Ct. 3348—is not. The Supreme Court has explicitly recognized child pornography’s harms for decades, including harm to child victims as well as a larger societal harm.[8] In military law the maintenance of good order and discipline is an additional foundational impetus for prosecuting child pornography, and this interest does not depend on the identification of a known child victim.
Given the large number of cases involving child pornography in the military, particularly since the Internet age, I do not see how *50 the majority can conclude that there is no custom in this area without detailed case law analysis — such a judgment would seem at least to require analysis of what the service has done in the past with similar cases. Moreover, the military has, as a matter of long-standing custom that predates the enactment of the UCMJ, punished lewd conduct involving children with a maximum punishment of seven years and a dishonorable discharge. See MCM, U.S. Army para. 117.c. (1949 ed.) (Table of Maximum Punishments, § A).
Thus, as Chief Judge Quinn wrote in characterizing the offense at issue in Blevens, “[i]t shocks reason and conscience to imply that such conduct is punishable only as a simple disorder.” 5 C.M.A. at 492, 18 C.M.R. at 116. All the more so since the offense has not heretofore been punished in that manner.

. As the majority has indicated, it is unclear why the lower court analyzed the issue based on § 2252A when the record indicates that the trial participants appeared to be referencing § 2252. However, regardless of which statutory provision was relied upon, my position regarding the majority’s analysis is the same.

. PROTECT Act of 2003, Pub.L. No. 108-21, § 502(a)(1), 117 Stat. 650 (2003).

. 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002).

.18 U.S.C. § 2256(8)(B), (11).

. Blevens was charged under Article 134, UCMJ, with wrongfully, unlawfully, and knowingly affiliating himself with a group advocating the violent overthrow of the United States government. In such a case, like the current Manual for Courts-Martial (MCM) provision, the 1951 MCM provided that such an offense may be punished as authorized by the United States Code. MCM para. 127.c. (1951 ed.).

. Justice O’Connor, in her concurring and dissenting opinion in Ashcroft, acknowledged this plain reading explicitly: “The 'appears to be ... of a minor' language in § 2256(8)(B) covers two categories of speech: pornographic images of adults that look like children (‘youthful-adult pornography’) and pornographic images of children created wholly on a computer, without using any actual children ('virtual-child pornography').” Ashcroft, 535 U.S. at 261, 122 S.Ct. 1389 (O’Connor, J., concurring and dissenting).

. With the exception of the substitution of “usage” for "consent” the definition of custom has remained unchanged since 1951. See MCM para. 213.b. (1951 ed.).

. "[The] use of children as ... subjects of pornographic materials is very harmful to both the children and the society as a whole.” S.Rep. No. 95-438, at 5 (1977), reprinted in 1978 U.S.C.C.A.N. 40, 43, quoted in Ferber, 458 U.S. at 758 n. 9, 102 S.Ct. 3348.