IN THE CASE OF


UNITED STATES, Appellee

v.

Robert L. MASON, Jr., Major
U.S. Air Force, Appellant

No. 02-0849

Crim. App. No. 34394

United States Court of Appeals for the Armed Forces

Argued March 2, 2004

Decided June 10, 2004

ERDMANN, J., delivered the opinion of the Court, in which
GIERKE, EFFRON, and BAKER, JJ., joined.  CRAWFORD, C.J., filed a
separate opinion dissenting in part and concurring in part.

Counsel

For Appellant:  Major Rachel E. Vanlandingham (argued); Colonel
Beverly B. Knott, Major Terry L. McElyea, and Captain Jennifer
K. Martwick (on brief).

For Appellee:  Major Shannon J. Kennedy (argued); Colonel
LeEllen Coacher, Lieutenant Colonel Robert V. Combs, Lieutenant
Colonel Lance B. Sigmon, and Captain Lane A. Thurgood (on
brief).

Military Judge:  Thomas G. Crossan, Jr.


**This opinion is subject to editorial correction before final publication**.

<u>United States v. Mason, Jr.</u>, No. 02-0849/AF

Judge ERDMANN delivered the opinion of the Court.

Major Robert L. Mason, Jr., entered guilty pleas and was convicted by a general court-martial of violating a lawful general order, engaging in conduct unbecoming an officer and a gentleman and knowingly receiving child pornography in violation of Articles 92, 133 and 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 892, 933 and 934 (2000), respectively. He was sentenced by the military judge to a dismissal, confinement for two years and forfeiture of all pay and allowances. In accordance with the terms of a pretrial agreement, the convening authority approved only so much of the sentence as provided for dismissal and six months' confinement.

Mason assigned several errors in his appeal to the Air Force Court of Criminal Appeals, including a claim that his guilty plea to the Article 134 charge was improvident in light of the Supreme Court's decision in <u>Ashcroft v. Free Speech Coalition</u>, 535 U.S. 234 (2002). The Court of Criminal Appeals reviewed Mason's claims, rejected all of them and affirmed his conviction and sentence.

Mason petitioned this Court for review of the Court of Criminal Appeals' decision and we granted review of the following assigned Issue I and specified review of Issue II:

> I. WHETHER APPELLANT'S PLEAS OF GUILTY TO OFFENSES UNDER 18 U.S.C. SECTION 2252A WERE INVOLUNTARY BECAUSE HE HAD AN INCOMPLETE UNDERSTANDING OF THE OFFENSES WHEN THE MILITARY JUDGE EXPLAINED THE OFFENSES USING THE UNCONSTITUTIONALLY

2

VAGUE AND OVERBROAD DEFINITIONS OF CHILD PORNOGRAPHY CONTAINED IN 18 U.S.C. SECTION 2256.

II.  IN THE EVENT THAT APPELLANT'S GUILTY PLEAS ARE IMPROVIDENT TO CHARGE III AND ITS SPECIFICATION UNDER CLAUSE 3 OF ARTICLE 134, WHETHER HIS PLEA IS PROVIDENT AS TO A LESSER-INCLUDED OFFENSE UNDER CLAUSE 1 OR CLAUSE 2 OF ARTICLE 134 IN LIGHT OF ASHCROFT V. FREE SPEECH COALITION, 535 U.S. 234 (2002) AND UNITED STATES V. O'CONNOR, 58 M.J. 450 (C.A.A.F. 2003).

We hold that while Mason's guilty plea to the clause 3, Article 134 offense was improvident, his plea was provident to a lesser-included offense under clauses 1 and 2 of Article 134.

## BACKGROUND

Mason served as a contracting officer assigned to the Defense Supply Center Columbus (DSCC), an arm of the Defense Logistics Agency.  The DSCC routinely handles highly sensitive and classified procurement matters, including multi-million dollar contracts.  It is primarily staffed with over 2,500 civilian employees, but is also staffed by a small contingent of military members, of which Mason was a part.

The DSCC monitored its employees' access to the Internet and during the course of that general monitoring process, Mason was identified as having accessed inappropriate websites. Subsequent monitoring and investigation disclosed that Mason had utilized two different DSCC computers to (1) view and/or download from the Internet various items with pornographic and obscene images or language; (2) participate in teen "chat rooms"

United States v. Mason, Jr., No. 02-0849/AF

and engage in discussions of a sexual nature; and (3) receive images of child pornography.

Mason was ultimately charged under Article 92 with three specifications of violating a general regulation pertaining to use of government computers, under Article 133 with one specification for conduct unbecoming an officer and a gentleman based on certain activities that he engaged in on the computers[1] and under clause 3 of Article 134 with one specification of violating the Child Pornography Prevention Act of 1996 (CPPA), 18 U.S.C. § 2252A (2000).[2]

The present appeal concerns the providence of Mason's guilty plea to the Article 134 charge. For this Court to reject a guilty plea on appellate review, the record of trial must show a substantial basis in law and fact for questioning the plea. United States v. Jordan, 57 M.J. 236, 238 (C.A.A.F. 2002)(citing United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991)).

DISCUSSION

A.   The Providence Inquiry and Record of Trial

---

[1] This specification involved Mason's conduct in participating in teen chat rooms on the Internet and in storing, viewing, displaying, or processing various items on both government computers, including pornography, erotic stories containing obscene language and certain "thumbnail" images of naked children.

[2] This specification involved a set of images specifically characterized as "child pornography" and distinct from the ones referred to in the Article 133 charge.

Under the clause 3 Article 134 specification, Mason was charged with a violation of the CPPA. The military judge explained that the statutory offense involved the knowing receipt of child pornography that had been transported in interstate or foreign commerce and was "assimilated into the [UCMJ] as another crime or offense not capital" under Article 134. The military judge advised Mason that the definitions for the CPPA offense were found in 18 U.S.C. § 2256 (2000) and went on to define numerous terms, specifically including the alternative definitions of "child pornography" under §§ 2256(8)(A)-(D):

> Child pornography means any visual depiction, including any photograph, film, video picture, or computer, or computer generated image or picture, whether made or produced by electronic, mechanical or other means for [sic] sexually explicit conduct where: a) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; b) such visual depiction is or appears to be of a minor engaging in sexually explicit conduct; c) such visual depiction has been created, adapted or modified to appear that an identifiable minor is engaging in sexually explicit conduct; or, d) such visual depiction is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct.

In addition to advising Mason of the definitional elements of the CPPA offense, the military judge included what he termed a "fourth element":

> Fourth -- and I instruct on this only in this case if it is determined that your plea is improvident on the charged offense, since the crime has been charged as an other crime or offense not capital -- such conduct was of a nature to

bring discredit upon the armed forces or was to the conduct [sic] of good order and discipline in the armed forces.

He went on to specifically ask Mason if he understood that "fourth element" and why it had been included.  After consulting with his defense counsel, Mason answered in the affirmative and indicated that he understood the element required that "his conduct must also be such to bring discredit upon the Air Force."  The military judge then further explained to Mason why it had been included:

> Now, it's my position with the charged offense as it is charged in Charge III, that is not an element of the charged offense.  However, in the abundance of caution, I add that as an element in case for some reason the appellate courts, if this case goes to the appeals system, determines your plea to the. . . [CPPA] charge is improvident, it would find that it was service discrediting or armed forces discrediting.  That is why I have added that element.

Mason indicated his understanding as to why that element had been added, indicated that he had no questions about any of the elements and acknowledged that he believed and admitted that the elements and definitions he had been given, taken together, correctly described what he had done.  He explained to the military judge that he had viewed several pictures of "minors doing lascivious poses" on his government computers and that he understood the movement of those images over the Internet was considered movement through interstate commerce.  He admitted during his discussion with the military judge and in his stipulation of fact that the images were "child pornography."

6

He also admitted during his discussion with the military judge that his conduct was of a nature to bring discredit upon the armed forces or was to the prejudice of good order and discipline.

B.   The Impact of Free Speech Coalition and O'Connor

The granted issue asks whether Mason's plea to the charged offense under clause 3 of Article 134 is provident in light of the Supreme Court's decision in Free Speech Coalition and our subsequent decision in O'Connor.  The specified issue asks whether, in the event of a negative answer to the granted issue, Mason's guilty plea can nonetheless be upheld as provident to a lesser-included offense under clauses 1 or 2 of Article 134.  We turn first to the granted issue.

1.   The Providence of the Plea Under Clause 3

As explained to him by the military judge, Mason's conduct in receiving "child pornography" was charged as a "clause 3" offense under Article 134, with the "crime or offense not capital" being a violation of the CPPA.  Thus, the criminal nature of Mason's conduct, as charged, derived from violating an independent federal criminal statute proscribing the receipt of "child pornography."  O'Connor, 58 M.J. at 452.

The military judge defined the elemental term "child pornography" to Mason by using portions of its statutory definition that were later struck down by the Supreme Court in

7

Free Speech Coalition. As occurred in O'Connor, the military judge's explanation to Mason of the elements of the CPPA offense utilized terms that were constitutionally overbroad. The judge's explanation made specific reference to visual depictions that "appear to be" of a minor engaging in sexually explicit conduct and materials that were pandered in a manner that "conveys the impression" that they include images of minors engaging in sexually explicit conduct. Finally, as was also the case in O'Connor, the record here contains no clear focus or discussion on those aspects of the CPPA not affected by the Supreme Court's ruling, i.e., "actual" child pornography under 18 U.S.C. §§ 2256(8)(A)-(B) or "computer morphed" images of an identifiable minor under § 2256(8)(C). O'Connor, 58 M.J. at 452.

Under our decision in O'Connor, a provident guilty plea to a violation of the CPPA must reflect that the accused violated those portions of the statute not affected by the Supreme Court's ruling in Free Speech Coalition. 58 M.J. at 454. The absence of any focus on or discussion concerning those aspects of the statute in the present record coupled with the use of the unconstitutionally overbroad definition during Mason's plea colloquy render this case indistinguishable from O'Connor. Accordingly, we cannot view Mason's plea of guilty to violating

United States v. Mason, Jr., No. 02-0849/AF

the CPPA, and thus to violating clause 3 of Article 134, as provident.

　　　2.　　The Providence of the Plea Under Clauses 1 and 2

　　　That conclusion leads us to the specified issue -- can Mason's guilty plea nonetheless be viewed as provident to a lesser-included offense under clauses 1 and/or 2 of Article 134? As noted in O'Connor, we have recognized in the past that an improvident plea to a clause 3 offense based on a federal child pornography statute may be upheld as a provident plea to a lesser-included offense under clause 2 of Article 134.　58 M.J. at 454 (citing United States v. Augustine, 53 M.J. 95 (C.A.A.F. 2000); United States v. Sapp, 53 M.J. 90 (C.A.A.F. 2000)).

　　　In O'Connor, we ultimately concluded that the guilty plea could not be viewed as provident to a lesser-included offense under the approach embodied in Sapp and Augustine.　While O'Connor had stipulated to the service-discrediting character of his conduct, there was no discussion of that element by the military judge during the plea inquiry.　Both Sapp and Augustine involved admissions by the accused during the plea inquiry as to the service-discrediting character of their conduct and we characterized those discussions as demonstrating that the accused "clearly understood the nature of the prohibited conduct."　58 M.J. at 454 (quoting Sapp, 53 M.J. at 92).

The plea colloquy in O'Connor was focused solely on "the nature of the prohibited conduct" under the CPPA, without any discussion or acknowledgement of the criminal nature of the conduct deriving alternatively (and independently) from its character as service-discrediting or prejudicial to good order and discipline. 58 M.J. at 455. Absent any discussion with the military judge as to how his conduct might be criminal under clause 1 or 2 as distinct from criminal under clause 3, we could not view O'Connor's guilty plea as provident to a lesser-included offense under clause 2.

The record here is clearly distinguishable from O'Connor in terms of the discussion between Mason and the military judge concerning the character of his conduct as service-discrediting and prejudicial to good order and discipline. The military judge openly explained that those were not elements of the "crime or offense not capital" that Mason was charged with under clause 3 and explained why he was including the additional element. Mason indicated his understanding as to why the element had been added. In the context of his explanations that he had viewed pictures of "minors doing lascivious poses" and the images of "child pornography" on his government computer, Mason then went on to affirmatively admit to the military judge that his conduct in doing so was both service-discrediting and

United States v. Mason, Jr., No. 02-0849/AF

to the prejudice of good order and discipline in the armed forces.

The record here thus contains what was missing in O'Connor and was present in both Sapp and Augustine.  The plea colloquy between the military judge and Mason demonstrates that he "clearly understood the nature of the prohibited conduct" in terms of that conduct being service-discrediting and prejudicial to good order and discipline.  O'Connor, 58 M.J. at 455.  Those clause 1 and clause 2 elements were explained to him as a basis for finding his conduct criminal apart from clause 3 and his discussions with and admissions to the military judge were made in that context.

Absent some other distinguishing factor, we could deem Mason's guilty plea provident as to a lesser-included offense under clause 1 and clause 2 under the principles embodied in Sapp and Augustine.  We recognized in O'Connor, however, that there is a distinguishing factor at play here: the impact of Free Speech Coalition and its creation of "a constitutional dimension that was not at issue in Sapp or Augustine."  58 M.J. at 454.

That constitutional dimension flows from the Supreme Court's extension of First Amendment protection to certain depictions of minors engaging in sexually explicit conduct, i.e., "virtual" as opposed to "actual" images.  Id. at 454-55.

11

United States v. Mason, Jr., No. 02-0849/AF

We expressly acknowledged in O'Connor, but did not answer, the question as to whether, in the wake of Free Speech Coalition, the possession, receipt or distribution of images of minors engaging in sexually explicit conduct (regardless of their status as "actual" or "virtual") could constitute service-discrediting conduct for purposes of Article 134.  Id. at 455.  Such inquiry must necessarily be undertaken on a case-by-case basis.

In analyzing this constitutional dimension, the ultimate question is whether the status of the images in the present case as "virtual" or "actual" is of consequence in the context of assessing the providence of Mason's guilty plea under clauses 1 and 2.  We conclude that it is not.  The receipt or possession of "virtual" child pornography can, like "actual" child pornography, be service-discrediting or prejudicial to good order and discipline.  Even if we were to assume that the specific images that serve as the basis for Mason's "child pornography" charge are "virtual" in nature, this still involves a commissioned officer of the United States Air Force receiving and viewing such images on a government computer in his workplace.  Under those circumstances, the distinction between "actual" child pornography and "virtual" child pornography does not alter the character of Mason's conduct as service-discrediting or prejudicial to good order and discipline.

12

<u>United States v. Mason, Jr.</u>, No. 02-0849/AF

Mason stipulated to a sexual maturity assessment of the images at issue here as depicting children between the ages of 12 and 16. He acknowledged to the military judge that the images depicted "minors doing lascivious poses" and constituted "child pornography." While the issue as to whether the images are "virtual" or "actual" may have a potentially dispositive effect in prosecutions under the CPPA in both civilian and military settings, it is not inherently dispositive of their impact on the esteem of the armed forces or good order and discipline. Those are the yardsticks by which the criminality of conduct under clauses 1 and 2 are measured. As the Supreme Court recognized:

> While the members of the military are not excluded from the protections granted by the First Amendment, the different character of the military community and of the military mission requires a different application of those protections. The fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it.

<u>Parker v. Levy</u>, 417 U.S. 733, 758 (1974). Even assuming the images at issue here are "virtual," Mason's conduct in receiving those images on his government computer can constitutionally be subjected to criminal sanction under the uniquely military offenses embodied in clauses 1 and 2 of Article 134.

Accordingly, we answer the specified Issue II in the affirmative and conclude that neither <u>Free Speech Coalition</u> nor our subsequent decision in <u>O'Connor</u> provide a substantial basis

13

in law or fact for questioning the providence of Mason's guilty

plea to a lesser-included offense under clauses 1 and 2 of

Article 134.

## CONCLUSION

The specification of Charge III is amended to read as

follows:

> In that MAJOR ROBERT L. MASON, JR., United States Air
> Force, 88th Mission Support Squadron, Wright-Patterson Air
> Force Base, Ohio, did, at or near Defense Supply Center,
> Columbus, Ohio, on divers occasions between on or about 8
> July 1998 and on or about 2 November 1999, knowingly
> receive one or more images of child pornography ~~that had
> been mailed, shipped, or transported in interstate or
> foreign commerce by any means, including by computer, in
> violation of 18 U.S.C. 2252A~~.

The decision of the United States Air Force Court of Criminal

Appeals is affirmed as to Charge III and its specification as

amended, as well as to the remaining Charges and their

specifications and the sentence.

14

CRAWFORD, Chief Judge (dissenting in part and concurring in part):

Because I agree that Appellant's plea was provident to a lesser-included offense under clauses 1 and 2 of Article 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 934 (2000), I concur in the majority's affirmation of Appellant's conviction. Nevertheless, I disagree that Appellant's guilty plea was improvident to the clause 3, Article 134 offense.

First, Appellant waived the Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002), issue by failing to address it at trial.

> When Appellant learned of his charge under Article 134, clause [3], for violating the Child Pornography Prevention Act (CPPA), 18 U.S.C. § 2252A (2000), he neither took exception to the charge generally, nor alleged that the basis for the charge – the CPPA – was unconstitutionally vague and overbroad. In so doing, Appellant cannot now be afforded relief on the very grounds he himself failed to raise, and therefore waived.

United States v. O'Connor, 58 M.J. 450, 456 (C.A.A.F. 2003) (Crawford, C.J., dissenting).

Moreover, the record establishes Appellant's understanding that the pornographic images based on which he was convicted depicted actual minors.

> When evaluating the providence of a guilty plea, "[r]ather than focusing on a technical listing of the elements of an offense, this Court looks at the context of the entire record to determine whether an accused is aware of the elements, either explicitly or

inferentially." United States v. Redlinski, 58 M.J. 117 (C.A.A.F. 2002)(emphasis added). "[T]here need only be 'factual circumstances' on the record 'which "objectively" support' the guilty pleas, *i.e.,* that actual minors were in appellant's pictures." United States v. James, 55 M.J. 297, 300 (C.A.A.F. 2001) (quoting United States v. Shearer, 44 M.J. 330, 334 (C.A.A.F. 1996)).

In James, this Court considered the following colloquy in evaluating the providence of the appellant's guilty plea to violating the pre-Free Speech Coalition CPPA:

Q. The term "child pornography" [under the CPPA] means any visual depiction . . . involv[ing] the use of a minor engaging in sexual [sic] explicit conduct. Such visual depiction is or appears to be of a minor engaging in sexually explicit conduct[.]

. . . .

Q. Now, why do you believe that - as far as describes those files - why you believe the files to be described as child pornography?

A. Well, they depicted young females under the age of eighteen, which as you stated, that they, uh, they are minors. I believe that the pictures depicted minors under the age of eighteen and at least four contained minors engaged in sexual activity.

. . . .

Q. Do you believe that one of those persons involved in that conduct was a minor?

A. I believe the person in the picture was under eighteen, yes, sir.

55 M.J. at 301 (emphasis added). The Court noted that through these words, the appellant "admitted that actual minors were in the charged pictures" and that these admissions were "amply supported by the pictures themselves." Id. at 300-01. The Court then concluded

2

> that "the factual circumstances reflected in the record 'objectively support' appellant's guilty pleas to possessing and transporting child pornography depicting <u>actual</u> minors." <u>Id.</u> (emphasis added). In short, although the appellant did not supply the adjectives "real" or "actual," and although the judge defined "pornography" in pre-<u>Free Speech Coalition</u> terms, this Court inferred from the language the appellant did use – "young females" and "minors" – that the images involved <u>actual</u> minors. <u>See</u> <u>Redlinski</u>, 58 M.J. at 117 (noting that providence may be confirmed by the record inferentially).

<u>Id.</u> at 456-57.

In the instant case, Appellant admitted during the providence inquiry that "[s]everal of the pictures [he's] looked at were child pornography, that is, <u>minors</u> doing lascivious poses" and that the pictures he viewed on his computer were "images of naked <u>children</u>." Moreover, in his stipulation of fact, Appellant listed the internet sites from which he obtained child pornography. He then admitted as follows: "All of the images listed directly above and as attached to this stipulation of fact <u>depict children who are between the ages of 12 and 16</u> according to a sexual maturity assessment." The descriptive terminology Appellant used – "naked children," "minors," and "children who are between the ages of 12 and 16" – was very similar to the terminology in <u>James</u>, particularly given the near equivalency in meaning of the words "minor" and "child." <u>See</u> <u>Black's Law Dictionary</u> 1011 (7th ed. 1999)(defining "minor" as "[a] person who has not reached full legal age; a <u>child</u> or

juvenile")(emphasis added). Finally, as in James and O'Connor, the pictures attached to the record in this case amply support Appellant's awareness that the images involved actual minors.

For these reasons, I would hold Appellant's plea provident to the clause 3, Article 134 offense. In any event, I concur in the majority's result, as I would also hold Appellant's plea provident to a lesser-included offense under clauses 1 and 2 of Article 134.