UNITED STATES, Appellee

v.

Marc R. REEVES, Sergeant
U.S. Army, Appellant

No. 03-0595

Crim. App. No. 20010497

United States Court of Appeals for the Armed Forces

Argued February 23, 2005

Decided September 29, 2005

ERDMANN, J., delivered the opinion of the court, in which EFFRON and BAKER, JJ., joined.  GIERKE, C.J., filed a separate opinion concurring in part and dissenting in part.  CRAWFORD, J., filed a dissenting opinion.

Counsel

For Appellant:  Captain Karen W. Riddle (argued); Colonel Mark Cremin, Lieutenant Colonel Mark Tellitocci, and Major Allyson G. Lambert (on brief); Colonel Robert D. Teetsel and Captain Gregory M. Kelch.

For Appellee:  Captain Mason S. Weiss (argued); Colonel Steven T. Salata, Lieutenant Colonel Mark L. Johnson, and Lieutenant Colonel Theresa A. Gallagher (on brief); and Captain Janine P. Felsman.

Amicus Curiae for Appellee:  Damian P. Richard (law student) (argued); Gregory M. Huckabee (supervising attorney) (on brief) – for the University of South Dakota School of Law.

Military Judge:  Kenneth H. Clevenger

**This opinion is subject to revision before final publication.**

Judge ERDMANN delivered the opinion of the court.[1]

Sergeant Marc R. Reeves was convicted of violating certain provisions of the Child Pornography Prevention Act of 1996 (CPPA),[2] charged as a "crime or offense not capital" under the third clause of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2000).  This is the same statute we addressed in United States v. O'Connor, 58 M.J. 450 (C.A.A.F. 2003), and more recently United States v. Martinelli, 61 M.J. ___ (C.A.A.F. 2005).  As in Martinelli, the conduct underlying Reeves' convictions occurred in Germany.  We granted review of this case to examine the extraterritorial application of the CPPA and the effect of that issue on the underlying charges in this case.

In Martinelli we considered whether the CPPA had extraterritorial application and concluded that it did not. Consistent with Martinelli, we hold that the three sections of the CPPA under which Reeves was charged do not extend to his conduct in Germany.  We further hold that none of Reeves' conduct in Germany continued into the United States.  Thus, none

---

[1] We heard oral argument in this case at the University of South Dakota School of Law, Vermillion, South Dakota, as part of this court's "Project Outreach."  This practice was developed as part of a public awareness program to demonstrate the operation of a Federal Court of Appeals and the military justice system.

[2] The CPPA consists of §§ 18 U.S.C. 2251, 2252, 2252A, 2260(b)(2000).

2

of Reeves' conduct falls within the domestic application of the CPPA.  We also hold that Reeves' guilty pleas to the CPPA-based Article 134, clause 3 specifications cannot be deemed provident as to lesser included offenses under either Article 134, clauses 1 or 2.

## PROCEDURAL BACKGROUND

Reeves entered guilty pleas and was convicted by a general court-martial in April and May of 2001 of violating a lawful general regulation in violation of Article 92, UCMJ, 10 U.S.C. § 892 (2000), and possessing child pornography, receiving child pornography, and using a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct in violation of the CPPA as a "crime or offense not capital" under clause 3 of Article 134, UCMJ.

Reeves was sentenced to a dishonorable discharge, confinement for fifty-six months, forfeiture of $250.00 pay per month for twelve months, reduction to pay grade E-1, and a reprimand.  Pursuant to a pretrial agreement, the convening authority reduced the confinement to thirty-six months and approved the balance of the sentence.  The United States Army Court of Criminal Appeals affirmed the findings but deleted a portion of the reprimand[3] and affirmed the remaining sentence.

---

[3] The Court of Criminal Appeals deleted that portion of the reprimand that referred to "distributing" child pornography

3

We granted review to determine whether Reeves' conviction of possessing, receiving, and producing child pornography, charged under clause 3 of Article 134, could be upheld in light of Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002).[4] We specified five additional issues addressing whether the CPPA had extraterritorial application.[5]

---

because Reeves did not distribute child pornography. United States v. Reeves, No. ARMY 20010497, slip op. at 2 (A. Ct. Crim. App. May 30, 2003).

[4] We granted review of the following issue raised by appellate defense counsel:

> WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED IN UPHOLDING APPELLANT'S CONVICTION UNDER THE CHILD PORNOGRAPHY PROTECTION [sic] ACT, 18 U.S.C. § 2251, ET SEQ., DESPITE THE SUPREME COURT'S PRONOUNCEMENT THAT THE CPPA DEFINITION OF CHILD PORNOGRAPHY IS UNCONSTITUTIONAL, ASHCROFT v. FREE SPEECH COALITION, 535 U.S. 234 (2002), AND THIS COURT'S DECISION THAT ASHCROFT v. FREE SPEECH COALITION REQUIRES THAT ACTUAL MINORS WERE USED IN PRODUCING THE PORNOGRAPHIC IMAGES. SEE UNITED STATES v. O'CONNOR, 58 M.J. 450 (C.A.A.F. 2003).

United States v. Reeves, 60 M.J. 376-77 (C.A.A.F. 2004)(order).

[5] The specified issues were:

> I. WHETHER 18 U.S.C. § 2252A(a)(2), WHICH IN PART PROSCRIBES KNOWING RECEIPT OF CHILD PORNOGRAPHY THAT HAS TRAVELED IN "FOREIGN COMMERCE," HAS EXTRATERRITORIAL APPLICATION.
>
> II. WHETHER 18 U.S.C. § 2252A(a)(5), WHICH PROSCRIBES KNOWING POSSESSION OF CHILD PORNOGRAPHY "ON ANY LAND OR BUILDING OWNED BY, LEASED TO, OR OTHERWISE USED BY OR UNDER THE CONTROL OF THE

4

FACTUAL BACKGROUND

A. Specifications 1 and 2:   Receiving and Possessing Child
   Pornography

Sergeant Reeves was assigned to the 502d Engineer Company of the 565th Engineer Battalion located at Pioneer Kaserne, a United States Army installation, in Hanau, Germany.  He resided with his family at New Argonner Kaserne, another U.S. Army installation in Hanau.  On a number of occasions from March to December 2000, Reeves went to the public library at Pioneer Kaserne and used the library computers to sign on to the Internet.

---

U.S. GOVERNMENT," HAS EXTRATERRITORIAL APPLICATION.

III. WHETHER 18 U.S.C. § 2251(a), WHICH IN PART PROSCRIBES USING A MINOR TO ENGAGE IN SEXUALLY EXPLICIT CONDUCT FOR THE PURPOSE OF PRODUCING A VISUAL DEPICTION OF THAT CONDUCT USING MATERIAL THAT HAS TRAVELED IN "FOREIGN COMMERCE," HAS EXTRATERRITORIAL APPLICATION.

IV. WHETHER 18 U.S.C. § 2252A(a)(2) IS BEING APPLIED DOMESTICALLY OR EXTRATERRITORIALLY WHEN APPLIED TO THE ACT OF DOWNLOADING AND RECEIVING CHILD PORNOGRAPHY AT A COMPUTER LOCATED IN GERMANY WHEN THAT MATERIAL WAS "SENT FROM THE U.S. THROUGH THE INTERNET."

V. WHAT EFFECT, IF ANY, IS THERE ON APPELLANT'S GUILTY PLEA TO RECEIVING CHILD PORNOGRAPHY IN VIOLATION OF 18 U.S.C. § 2252A(a)(2), FROM APPELLANT'S ADMISSION DURING THE PROVIDENCE INQUIRY THAT THE IMAGES "WERE SENT FROM THE U.S. THROUGH THE INTERNET TO ME."

Once on the Internet, Reeves would enter "teen" chat rooms where he would communicate with individuals who indicated they were twelve to fifteen years old.  Reeves received e-mail that contained digital images, including images of minors "in a state of nudity involving a lewd exhibition or graphic focus on a minor's genitals."  Reeves also belonged to "e-mail distribution groups" from which he automatically received child pornography.  Reeves would download and view these images on the library computers and print them out on the library printers.  After his conduct was discovered and reported to law enforcement, various printed images containing child pornography were found in Reeves' vehicle and in his quarters.

Based upon these facts, Reeves was charged with the following violations of the CPPA under clause 3 of Article 134:

> Specification 1: . . . at or near Hanau, Germany, on land used by and under the control of the United States Government, to wit: New Argonner Kaserne, between on or about 01 March 2000 and 05 December 2000, knowingly and wrongfully possess[ed] about 46 computer printouts containing child pornography in violation of Title 18 U.S. Code § 2252A(a)(5)(A).

> Specification 2: . . . at or near Hanau, Germany, between on or about 01 March 2000 and 05 December 2000, knowingly and wrongfully receive[d] child pornography that had been transported in interstate commerce or foreign commerce by means of a computer to wit: downloading electronic files containing child pornography from the internet and copying said files onto the hard drive of a computer located at the Pioneer Library in Hanau, Germany in violation of 18 U.S. [Code] § 2252A(a)(2).

B.  Specification 3: Producing a visual depiction of a minor engaged in sexually explicit conduct

The facts underlying this offense occurred in the summer of 2000 when Reeves used a camcorder to videotape "two little German girls" near the Main River in Hanau, Germany.  (PE 1). From a distance of about 200 feet, Reeves filmed the girls, focusing in on their "genital areas", and focusing in particular on one of the girls "in a way to see into the little girl's shorts" and intending "to satisfy [his] lust."

Based upon these facts, Reeves was charged with the following violation of the CPPA under clause 3 of Article 134:

> Specification 3:  at or near Hanau, Germany, on or about between May 2000 and August 2000, use[d] a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct using material that had been mailed, shipped or transported in interstate commerce or foreign commerce in violation of 18 U.S. [Code] § 2251(a).

## DISCUSSION

A.  Standard of Review

This case involves a guilty plea.  For this court to reject a guilty plea on appellate review, the record of trial must show a substantial basis in law and fact for questioning the plea. United States v. Jordan, 57 M.J. 236, 238 (C.A.A.F. 2002)(citing United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991)). Whether Congress intended 18 U.S.C. §§ 2251(a) and 2252A(a)(2) and (a)(5)(A) to have extraterritorial application is a question

7

of statutory interpretation. Interpretation of a statute and its legislative history are questions of law that we review de novo. United States v. Falk, 50 M.J. 385, 390 (C.A.A.F. 1999); Martinelli, 61 M.J. at ___ (8).

B. The Nature of the Charge under Article 134

Reeves' possession, receipt and production of child pornography were charged as violations of Article 134, UCMJ -- the "General Article." Conduct is punishable under Article 134 if it prejudices "good order and discipline in the armed forces" (clause 1), if it is "of a nature to bring discredit upon the armed forces" (clause 2), or if it is "a crime or offense not capital" (clause 3). O'Connor, 58 M.J. at 452; Martinelli, 61 M.J. at __ (8). As was the case in both O'Connor and Martinelli, Reeves' offenses under Article 134 were specifically charged as "clause 3" offenses, with 18 U.S.C. §§ 2251(a) and 2252A(a)(2) and (a)(5)(A) serving as the "crimes or offenses not capital."

As in Martinelli, the principal issue that we specified for review is whether the CPPA applies to Reeves' conduct in Germany. If we find that the CPPA is not applicable to Reeves' conduct in Germany, we must then consider whether, due to the nature of his usage of the Internet, his conduct fell within the domestic application of the CPPA. Finally, if we find that Reeves' pleas were improvident under clause 3 of Article 134, we

8

must determine whether they would be provident to a lesser included offense under clause 1 or 2 Article 134.

C.  The Extraterritorial Application of the CPPA

(1) Extraterritorial Application of § 2252A

In Martinelli this court determined that § 2252A did not apply extraterritorially to Martinelli's conduct in Germany. Under the rationale of United States v. Bowman, 260 U.S. 94 (1922) and Equal Employment Opportunity Commission v. Arabian American Oil Co. (Aramco), 499 U.S. 244, 248 (1991), we concluded that the CPPA is subject to a presumption against extraterritoriality and that there was nothing in the language of the statute or the legislative history to overcome this presumption.  Martinelli, 61 M.J. at __ (25-26).  As a result there was a substantial basis on which to question the providence of Martinelli's guilty plea to the CPPA-based clause 3 offenses resulting from conduct occurring in Germany.

Reeves' receipt and possession of child pornography -- charged under § 2252A -- also occurred in Germany and in that respect this case is indistinguishable from Martinelli. Therefore, consistent with our holding in Martinelli, we find that § 2252A does not have extraterritorial application and is inapplicable to Reeves' conduct in Germany.

9

(2)  Extraterrorial Application of § 2251(a)

Unlike Martinelli, Reeves was also charged with producing a visual depiction of sexually explicit conduct by a minor in violation of § 2251(a).  We have not previously considered the question of the extraterritorial application of § 2251(a).[6]

As with § 2252A, we begin with a presumption against extraterritoriality.  The Supreme Court has recognized as a longstanding principle of American law "that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." Aramco, 499 U.S. at 248 (quoting Foley Bros. v. Filardo, 336 U.S. 281, 285 (1949)).  As we stated in Martinelli, we must assume that Congress legislates against the backdrop of this presumption.  Martinelli, 61 M.J. at ___ (10).  Moreover, offenses created by the CPPA do not fall within the Bowman exception to the presumption against extraterritoriality.  Id. at ___ (12) (citing United States v. Bowman, 260 U.S. at 97-98, for the proposition that certain "criminal statutes which are, as a class, . . . enacted because of the right of the government to defend itself against obstruction, or fraud wherever perpetrated" are not accorded a presumption of

---

[6] Section 2251(a) was originally enacted in 1978 as part of the Protection of Children Against Sexual Exploitation.  It was amended a number of times over the years and in 1996 it was incorporated into the CPPA.

10

extraterritoriality).  We look next "to see whether 'language in the [relevant statute] gives any indication of a congressional purpose to extend its coverage beyond places over which the United States has sovereignty or some measure of legislative control.'"  Aramco, 499 U.S. at 1230 (quoting Foley Bros., 226 U.S. at 285); see also Small v. United States, 125 S. Ct. 1752 (2005).  To answer this question we look at the text of the statute, its structure and its legislative history.  Martinelli, 61 M.J. at __ (15-16).

(a)  Text and Structure

As in Martinelli, the statutory section in question includes references to "interstate and foreign commerce."  This language is "not, in and of [itself], a 'clear expression' of any congressional intention that the acts proscribed by the statute constitute a federal crime no matter where in the world they occur."  Id. at __ (18).  As in Martinelli, we decline to find congressional intent for extraterritorial application based solely on the use of the words "interstate and foreign commerce."[7]

---

[7] Our discussion of Congress' intent is also informed by an analysis of the "Territory or Possession of the United States" language in § 2251.  Although this phrase refers to physical locations outside of the fifty United States, it is not a broad or all encompassing phrase.  The "territories" of the United States are generally defined as including Guam, the United States Virgin Islands and American Samoa, as well as the Commonwealths of Puerto Rico and the Northern Mariana Islands.

11

In addition, Congress' intent to limit the reach of § 2251(a) is made more clear by reference to § 2260. In 1994, Congress adopted § 2260, which specifically targets "[a] person who, <u>outside the United States</u>, employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . ." Emphasis supplied. In other words, there is another statutory section that addresses all of the same acts when such acts are committed outside of the United States with the intent that the materials be sent into the United States. If Congress intended § 2251(a) to apply extraterritorially, there would have been no need for § 2260 because such behavior would already have been criminalized regardless of whether the accused intended to import the visual depictions into the United States.

---

<u>See</u> Daniel H. MacMeekin, <u>The Overseas Territories and Commonwealths of the United States of America</u> (2000), available at <u>http://www.macmeekin.com/Library/terr+commonw2.htm</u>. The United States also asserts sovereignty over, and administers, a number of small islands which do not have permanent populations. These islands are often referred to as "possessions". These include Howland, Baker, and Jarvis Islands; Kingman Reef; and Johnson, Palmyra, Wake, and Midway Atolls, all in the Pacific; and Navassa Island in the Caribbean. <u>Id.</u> Congress' decision to use the phrase "Territories and Possessions of the United States" suggests that Congress wished to limit the statute's application rather than to broaden it.

(b)  Legislative History

Having concluded that the text and structure of § 2251(a) do not express any clear intent by Congress that the statute apply extraterritorially, we turn to its legislative history. We conclude that it too gives no indication that Congress intended § 2251(a) to apply extraterritorially.  The clear focus of that legislative history is on the patent evils of child pornography and the concern that "child pornography and child prostitution have become highly organized multimillion dollar industries that operate on a nationwide scale."  S. Rep. No. 95-438, at 5 (1977).  Although the history of § 2251(a) contains extensive discussion of the nationwide problem of child pornography, it does not discuss issues of extraterritoriality, much less include any clear expression of congressional intent in that regard.

D.   The Domestic Application of the CPPA

In Martinelli, we also considered whether any of Martinelli's conduct could be characterized as domestic conduct as he had stipulated that all of the e-mails that he sent or received were routed through servers in the United States.  61 M.J. at ___ (26-27).  We concluded in that case that the act of "sending" e-mails containing child pornography was a "continuing offense" because Martinelli's conduct continued as the e-mail traveled through the Internet to its destination.  Id. at ___

13

(29).  Because the e-mails in Martinelli traveled through the United States en route to their destination, we found that the sending offense occurred in both Germany and the United States and therefore the CPPA applied domestically to that specification.  Id.

We went on to conclude that other specifications, which charged Martinelli with "receiving child pornography" and "reproducing child pornography for distribution", were not "continuing offenses" as they did not involve any conduct that started in Germany and continued into the United States. Therefore, there was no domestic application of the CPPA available for those offenses.  Here, as in Martinelli, each specification alleges different conduct and each must be examined individually.

Specification 1 (possession):  This specification charged Reeves with violating 18 U.S.C. § 2252A(a)(5)(A) by possessing child pornography on land used by and under the control of the United States Government.  This specification is a "situs" based possession charge and does not allege movement of child pornography through the Internet.  The principle of "continuing jurisdiction" is therefore inapplicable to this specification and there is no basis for finding a domestic application of the CPPA.

14

Specification 2 (receiving): This specification charged Reeves with violating 18 U.S.C. § 2252A(a)(2) by receiving child pornography that had been transported through the Internet. Reeves admitted during his providence inquiry that the images were "sent from the U.S. through the Internet to me." Had Reeves been charged with "sending" e-mails containing child pornography through the Internet, the principle of a "continuing offense" may have established domestic U.S. application of the CPPA. However, Reeves was charged with "receiving"[8] e-mails containing child pornography. Here, Reeves did not knowingly receive the images until he accessed the pictures in Germany and the act of opening the images did not trigger a chain of events that continued into the United States. His conduct therefore can not be subject to a domestic U.S. application of the CPPA. Martinelli, 61 M.J. at ___ (30).[9]

---

[8] The military judge defined "receiving" as "to take into one's possession and control or accept custody of . . . ."

[9] With respect to the question of whether all of the email messages in Reeves' Excite account were "resident" on Internet servers located in the United States, Excite.com (which was operated by At Home or Excite@Home until the company declared bankruptcy in late 2001) had both domestic and international operations during the time period in which Reeves was using his excite.com account to receive child pornography. See At Home Corporation, Form 10-K, Annual Report for Fiscal Year 2000, available at http://www.sec.gov/Archives/edgar/data/1020620/000101287001001498/0001012870-01-001498-0001.txt ("We also lease space at smaller facilities in various locations throughout the

Specification 3 (production):  This specification charged Reeves with violating 18 U.S.C. § 2251(a) by using a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct.  Although Reeves admitted that the camcorder he used to videotape the German girls had been manufactured in Japan, purchased in the United States and transported by him to Germany, in videotaping the girls he did not begin any conduct that continued into the United States.  His conduct occurred entirely in Germany and there can be no domestic application of the CPPA.  Martinelli, 61 M.J. ___ (29-30).

In summary, none of acts identified in the specifications in Charge II constitute a "continuing offense" and therefore there can be no domestic application of the CPPA in this case.

E.  The Possibility of Lesser Included Offenses

The conclusion that Reeves' guilty pleas are not provident under clause 3 of Article 134 does not end our inquiry.  We have recognized in the past that an improvident plea to a CPPA-based clause 3 offense may, under certain circumstances, be upheld as a provident plea to a lesser included offense under clause 2 of Article 134.  See, e.g., United States v. Augustine, 53 M.J. 95

United States as well as in several international locations.").  Reeves admitted only that images were sent to him from the U.S. "through the Internet . . . ."  The record does not include any information about where the servers on which his opened and unopened email messages were located.

16

(C.A.A.F. 2000); United States v. Sapp, 53 M.J. 90, 92 (C.A.A.F. 2000); O'Connor, 58 M.J. at 454–55; United States v. Mason, 60 M.J. 15, 20 (C.A.A.F. 2004); Martinelli, 61 M.J. at __ (35). The question is whether those circumstances are present in Reeves' case.

Augustine and Sapp were two pre-Free Speech Coalition[10] cases where:

> the guilty pleas . . . were entered to a violation of Article 134, clause 3, based on possession of child pornography in violation of the CPPA. As in this case, the guilty pleas were found to be improvident as to the clause 3 offense in light of certain requirements under the CPPA that were not established in the record. In those cases, however, we concluded that the guilty pleas were provident as to the lesser-included offense of engaging in "conduct of a nature to bring discredit upon the armed forces" under clause 2 and upheld the convictions under Article 134. Augustine, 53 M.J. at 96; Sapp, 53 M.J. at 92.

O'Connor, 58 M.J. at 454. Sapp and Augustine dealt with the possibility of a lesser included offense under clause 2 of Article 134 where a guilty plea to a CPPA-based clause 3 Article 134 charge was found improvident. In those cases, where no

---

[10] In Free Speech Coalition the Supreme Court determined that certain portions of the definition of term "child pornography" used in § 2252A were unconstitutional, specifically the "or appears to be" language of § 2256(8)(B) and the entirety of §2256(8)(D), specifically the "conveys the impression" language. 535 U.S. at 256, 258. Prior to Free Speech Coalition, knowing possession and receipt of images of child pornography, actual or virtual, was sufficient to establish one of the factual predicates for a provident guilty plea under the CPPA. Following the decision, the actual character of the visual depictions is a factual predicate to any plea of guilty under the CPPA therefore requiring an inquiry into the "virtual" or "actual" nature of the images. O'Connor, 58 M.J. at 453.

17

constitutional considerations were involved, we found the pleas provident to a violation of clause 2 of Article 134.

After the Free Speech Coalition decision, we explained in O'Connor, Mason and Martinelli that where the constitutional rights of a servicemember could come into play, we will apply closer scrutiny to the providence inquiry before upholding a plea as provident to a lesser included offense under clause 1 or 2 of Article 134. See O'Connor, 58 M.J. at 454–55; Mason, 60 M.J. at 19; Martinelli, 61 M.J. at ___ (36-37). The difference between our review of a providence inquiry under the O'Connor/Mason/Martinelli standard and our review under the less strict Augustine/Sapp standard is a qualitative difference. "Although the understanding required of the servicemember remains the same, we require a clearer more precise articulation of the servicemember's understanding under O'Connor than we require in cases where the accused's First Amendment rights are not implicated." Martinelli, 61 M.J. at ___ (37).

During Reeves' providence inquiry the military judge defined the term "child pornography" for purposes of Specifications 1 and 2 without utilizing the language determined to be unconstitutional by the Supreme Court in Free Speech

18

Coalition.[11]  Specification 3 charged a violation of 18 U.S.C. §

2251(a) which does not contain the term "child pornography".[12]

With no constitutional dimension at play in the providence

inquiry, our analysis into the possibility of a lesser included

offense is governed by the principles embodied in Augustine and

Sapp rather than O'Connor, Mason, or Martinelli.

Nevertheless, the providence inquiry must reflect that the

accused "clearly understood the nature of the prohibited

conduct."  Sapp, 53 M.J. at 92.  In both Augustine and Sapp the

accused admitted the service discrediting character of his

conduct during the plea inquiry and we characterized those

discussions as demonstrating that the accused "clearly

understood the nature of the prohibited conduct."  Augustine, 53

M.J. at 96; Sapp, 53 M.J. at 92.

In this case, however, there is an absence of any inquiry or

discussion of service discrediting conduct or conduct that is

prejudicial to good order and discipline.  The military judge

did not list service discrediting conduct or conduct that is

prejudicial to good order and discipline as an element of any of

---

[11] Here the military judge did not use the "or appears to be" or
the "conveys the impression" language focused on by the Supreme
Court.
[12] The phrase "engaged in sexually explicit conduct" as found in
§ 2251(a) is defined in § 2256 to be a depiction of "lascivious
exhibition of the genitals."  That term has been held to be
constitutional.  United States v. Wiegand, 812 F.2d 1239 (9th
Cir. 1987).

19

the child pornography offenses.  The plea inquiry focused entirely on the elements of the clause 3 offenses.  Thus, the providence inquiry simply does not provide a sufficient basis for determining that Reeves' pleas are provident to the lesser included offenses of conduct that is service discrediting or prejudicial to good order and discipline under clause 1 or 2 of Article 134.

### DECISION

The decision of the United States Army Court of Criminal Appeals as to Charge II and its specifications and the sentence is reversed, but is affirmed in all other respects.  The findings of guilty to Charge II and its specifications and the sentence are set aside and the record of trial is returned to the Judge Advocate General of the Army for a rehearing on Charge II and its specifications and the sentence.[13]  If a rehearing on Charge II and its specifications is deemed impracticable, that charge and those specifications may be dismissed and a rehearing held on the sentence alone.  Thereafter, the provisions of Articles 66(b) and 67(a), UCMJ, 10 U.S.C. §§ 866(b), 867(a) (2002), shall apply.

---

[13] Because of our decision in this case, the specifications of Charge II will necessarily have to be amended prior to any rehearing to allege lesser included offenses of conduct prejudicial to good order and discipline in the armed forces, or of a nature to bring discredit upon the armed faces in violation of clauses 1 and/or 2 of Article 134, UCMJ.

20

United States v. Reeves, No. 03-0595/AR

GIERKE, Chief Judge (concurring in part and dissenting in part):

The bottom line is that I agree with the majority as to both reasoning and result to affirm only Appellant's guilty plea to Charge I and its sole specification.  Therefore, I concur in part.

But with respect to the three Child Pornography Prevention Act (CPPA) offenses all in Charge II, I disagree with the majority as to either its reasoning (Charge II, specifications 1 and 2) or to both its reasoning and result (Charge II, specification 3).  So I also respectfully dissent in part.

The result that I reach is not so different from the majority, but the judicial path to resolve this case is both different and important.  As we agree to the disposition as to Charge I, I focus only on the three specifications under Charge II.

In United States v. Martinelli,[1] I concluded that the CPPA has extraterritorial application.  I disagree with the conclusion that the Congress that enacted the CPPA did not intend it to apply extraterritorially to reach the actions of a servicemember when he possesses, receives, and produces child pornography[2]

---

[1] 61 M.J. __, __ (1-23)(C.A.A.F. 2005) (Gierke, C.J., concurring in part and dissenting in part).
[2] Section 2252A(a)(2) of Title 18 of the U.S. Code proscribes the knowing receipt of child pornography, 18 U.S.C. § 2252A(a)(5) prohibits the knowing possession of child pornography, and 18 U.S.C. § 2251(a) makes it a crime to use a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct.

merely because he is outside the territorial boundaries of the United States.

Also as I stated in Martinelli, I do not read the language in Bowman[3] as narrowly as does the majority.[4]  I believe that to do so, the majority incorrectly interprets the underlying rationale of the exception to the presumption against extraterritoriality and also misevaluates the nature and impact of the offenses in this case.  Given the limitless boundaries of cyberspace, child pornography over the Internet is just the type of offense to which the exception to the presumption against extraterritoriality should apply.

And, as I fully discussed in Martinelli,[5] interpreting the plain language of the statute, its legislative history, and the comprehensiveness of the scheme of the entire statute, I believe Congress clearly meant the CPPA to reach the acts of a United States servicemember who possesses and receives child pornography on a U.S. military base in Germany.  For the same reasons, I believe Congress intended the statute to reach Appellant's offense of involving young German girls in the production of child pornography that occurred off-base in Germany.

Additionally, § 2260 clearly pertains to the production of child pornography with the intent to import that pornography

---

[3] United States v. Bowman, 260 U.S. 94, 96 (1922).
[4] See Martinelli, 61 M.J. at __, __ (3-11)(Gierke, C.J., concurring in part and dissenting in part).
[5] Id. at __ (11-23)(Gierke, C.J., concurring in part and dissenting in part).

2

into the United States.  Under that statute, the Government is required to prove the additional element of intent to import the child pornography into the United States in order to prosecute an accused.  Thus, I am not persuaded by the majority's argument that § 2260 eliminates the need to decide if § 2251(a) applies extraterritorially to cover Appellant's act of producing a visual depiction of a minor engaged in sexually explicit conduct.[6] Rather, I believe that § 2251(a) reaches Appellant's CPPA-based offenses in this case precisely because it does have extraterritorial application.

As I conclude that the three CPPA-based specifications under which Appellant was charged extend to Appellant's criminal conduct in Germany, I respectfully dissent in part.  Having established this point, Appellant's guilty plea to all three CPPA-based offenses under Charge II initially appears provident.  But, unlike the majority, I view Appellant's guilty pleas to the possessing and receiving pornography (Charge II, specifications 1 and 2) to be improvident in light of the Supreme Court's decision in Ashcroft v. Free Speech Coalition.[7]  This conclusion results in my agreeing with the majority's decision to remand the specifications, but for the different reason I have stated.

As to specification 3 of Charge II, I disagree with the majority that Appellant's guilty plea is provident only to the lesser included offense.  I view Appellant's plea to the charged

---

[6] See United States v. Reeves, 61 M.J. __ (12-13) (C.A.A.F. 2005).

offense provident because the constitutionally-objectionable "child pornography" language is not included in that specification. Therefore, I would affirm Appellant's guilty plea to this offense.

In summary, I concur with the disposition of Charge I and the majority's result in addressing Charge II, specifications 1 and 2. I dissent from the disposition of Charge II, specification 3.

---

[7] 535 U.S. 234 (2002).

United States v. Reeves, 03-0595/AR

CRAWFORD, Judge (dissenting):

For the reasons thoroughly explained in United States v. Martinelli, 61 M.J. __, __ (C.A.A.F. 2005) (Crawford, J., dissenting), I respectfully dissent and offer a few additional comments.

Like Specialist Martinelli, Appellant was stationed at a United States military installation in Germany, subscribed to a web-based e-mail account, and used a public computer to commit violations of 18 U.S.C. § 2252A, as well as Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892 (2000). Unlike Martinelli, who used an off-post Internet café, Appellant used U.S. Government-owned computers in the post library to effect receipt of, as well as to view and print, pornographic images of actual children. In addition, Appellant, while among the German civilian populace near Hanau, used actual German children to produce a sexually explicit videotape in violation of 18 U.S.C. § 2251(a).

DOMESTIC ASPECT OF APPELLANT'S CRIMES

Prosecution Exhibit 1, Appellant's stipulation of fact (including the documents comprising TAB B) and his responses during the Care inquiry,[1] establish that Appellant had a web-based e-mail account at Excite.com which afforded him electronic "space" on Excite.com's servers in the United States. Using a

---

[1] United States v. Care, 18 C.M.A. 535, 40 C.M.R. 247 (1969).

web browser on the library's computers, Appellant gained access to his e-mail account which he then used as an address at which to receive pornographic images, view them, store them, and download them to the hard drives of the library computers for printing.  He admitted that these images had been "transported in interstate or foreign commerce" because "they were sent from the U.S. through the Internet to me."[2]  Appellant's receipt of child pornography occurred in the United States, just as it did on a U.S. military post in Germany.

APPLICATION OF § 2252A TO OVERSEAS MILITARY INSTALLATIONS

After printing images of child pornography, using the library's printers, Appellant stored numerous images of child pornography at his family quarters, in his automobile, and his quarters storage area, all on a U.S. Army Kaserne near Hanau, Germany.  All of the theories I voiced in Martinelli pertain a fortiori to Appellant's possession of child pornography on a U.S. military installation.

APPLICATION OF § 2251(a) TO OVERSEAS CONDUCT

While the jurisdictional theories I advanced in Martinelli also apply to Appellant's prosecution under this statute, I must reject the majority's attempt to distinguish the jurisdictional language in this statute from that in § 2260.  The majority

---

[2] Appellant's use of "Me" refers to his web-based address on the servers of Excite.com.  Some of these images clearly indicate that they were routed through commerce repeatedly.

contends that territorial application of § 2251(a) was not intended by Congress because § 2260, with express extraterritorial application "addresses all of the same acts." United States v. Reeves, 61 M.J. __, __ (12) (C.A.A.F. 2005). Not quite. First, § 2260 carries with it no requirement that any of the criminal acts be connected to interstate or foreign commerce, giving § 2260 far greater breadth. Second, it is clear to my reading that § 2260 was enacted not only to expand the scope of existing prohibitions, but to serve as an emphatic statement of congressional intent to exercise jurisdiction over non-U.S. citizens who may produce child pornography in their own countries for importation into the territory or waters of the United States. Even if there is overlap between these statutes, I believe they have related but different purposes.

WAIVER

Appellant has waived this issue, both as to § 2252A and § 2251(a). See United States v. Martin, 147 F.3d 529, 533 (7th Cir. 1988).[3] In the stipulation of fact, Appellant stipulated that "there are no impediments to the jurisdiction of the court."

---

[3] "A challenge to the indictment based on the adequacy of the interstate commerce stipulation had no relation to subject matter jurisdiction -- the power to adjudicate -- but instead went only to an alleged failure of proof."

JURISDICTION UNDER § 2252A BASED ON COMMERCE

Appellant also stipulated that these images were sent from or through a site in the United States and that he knowingly received and transported the pictures "in interstate or foreign commerce."  When questioned by the military judge, he said the images "were sent from the United States through the Internet to me."  When the military judge asked Appellant whether he was satisfied that this amounted to interstate or foreign commerce, he agreed.

PROVIDENCE TO CLAUSES (1) AND (2) OFFENSES

Appellant, a sergeant with a high school diploma, over five years of active duty, and then serving at his fourth permanent duty station, pleaded guilty to violating a lawful general regulation by viewing child pornography.  He admitted to understanding that the regulation prohibiting viewing of child pornography was lawful because it was "reasonably necessary to safeguard and protect the morale, discipline, and usefulness of the members of the command and is directly connected to the maintenance of good order and discipline."  He admitted that his conduct in viewing child pornography was wrongful and that he had no legal justification or excuse.  He stipulated to leaving images of child pornography on the printer at the installation library where soldiers, civilians, and dependents could find it, and to taking his very young daughter with him to the library

4

where he would view and print images of child pornography. He stipulated to standing on one side of the Main River and, for between twenty and thirty minutes, training his video camera on the genital area of two young German girls, while accompanied by his own young daughter. All of these images and films he secreted in his vehicle, quarters, and quarters storage area.

Even if these were the only facts we had to go on, I would find it impossible to conclude that Sergeant Reeves did not understand "the nature of the prohibited conduct." Said another way, how could Sergeant Reeves admit that the Commander of U.S. Army, Europe, could lawfully prohibit the viewing of child pornography so as to "promote the morale, discipline, and usefulness of the members of the command" and that such prohibition was "directly connected to the maintenance of good order and discipline" without knowing that using the post library's computers and printers to receive, download, and print child pornography in front of his two and one-half-year-old daughter and leaving child pornography on the printer for all to see was prejudicial to good order and discipline? He could not.

And it is only the smallest of steps to conclude that, on this record, Appellant also knew that openly focusing his video camera, for twenty to thirty minutes on the pubic area of seven-year-old German national children as they played by a public river, was equally prejudicial and service discrediting as well.

5

United States v. Reeves, 03-0595/AR

This record overwhelmingly supports affirmation of a lesser included offense under either or both clauses (1) and (2) of Article 134, UCMJ.

CONCLUSION

There is no substantial basis in law or fact to question the providence of Appellant's pleas.  Even if the record were insufficient to uphold Appellant's pleas to violations of §§ 2252A and 2251(a), however, the record strongly supports conviction for disorders on the same facts.  For all these reasons, I respectfully dissent.